THE COLLEGE OF PHYSICIANS AND SURGEONS OF KEOKUK v. E. A. GUILBERT, *et al.*, Constituting THE STATE BOARD OF MEDICAL EXAMINERS, Appellants.

**Venue:** ACT UNDER COLOR OF OFFICE: *State board of health.* Said board, while in session at Des Moines, made an order denying a college future recognition. The investigation leading to this action was made in Lee county. Code, section 2579, authorizes action, as to matters done under color of office to be brought in any county in which the cause of action, or some part thereof, arose *Held, certiorari,* to have said board compelled to recognize said college, must be brought in Polk, and cannot be maintained in Lee county.

**Certiorari:** JURISDICTION OF SUPERIOR COURT: *Construction of statute.* Under McClain's Code, section 769, which gives the superior court jurisdiction in *all civil matters,* with certain exceptions not including *certiorari,* said court can entertain *certiorari* proceedings, though said statute does not mention *certiorari.*

*Appeal from Keokuk Superior Court.*—HON. J. C. BURK, Judge.

THURSDAY, DECEMBER 10, 1896.

THE plaintiff college is a corporation located in the city of Keokuk, in Lee county, this state. The defendants seven in number, are members of the board of medical examiners of the state, under appointment as provided by law. By section 1, chapter 104, Acts Twenty-first General Assembly, it is provided that "every person practicing medicine, surgery or obstetrics, in any of their departments within this state, shall possess the qualifications required by this act. If a graduate in medicine, such person shall present his or her diploma to the state board of examiners, for verification as to its genuineness. If the diploma is found genuine, and is issued by a medical school legally organized and in good standing, of which the state board of examiners shall determine, and if the person presenting and claiming such diploma be the person to whom the same was originally granted, then the state board of examiners shall issue its certificate to that effect, signed by not less than five physicians thereof, representing one or more physicians of the schools on the board, and such certificate shall be conclusive as to the right of the lawful holder to practice medicine, surgery, and obstetrics within this state." The petition shows, among other facts, that at the graduating exercises of said college, March 5, 1895, twenty-six students graduated and received their diplomas; that some of such graduates presented their diplomas to the defendant board, and that it refused to grant certificates to such graduates on the ground that the college issuing the diplomas was not in good standing; that the first intimation the management of the college had of the

intention of the board to refuse certificates to its graduates, was March 10, 1895, by a letter from the secretary of the board to the secretary of the college; that, prior thereto, and since the organization of the state board of examiners, it had always recognized the college as in good standing, and issued certificates to the holders of the diplomas; that on the twenty-eighth day of March, 1895, in the city of Des Moines, the defendant board, by resolution or otherwise, declared the plaintiff college not in good standing; and it is averred in the petition that the action of the board in refusing to recognize the diplomas and degrees issued by the plaintiff is illegal and without authority, upon grounds particularly specified therein. It is asked that the proceedings of the board be declared void, and that the diplomas of the plaintiff shall be recognized, with other relief.   The petition was filed April 10, 1895, and a writ of *certiorari* issued to the defendants.   Such proceedings were had that members of the board were arraigned for contempt, and a fine imposed for a refusal to obey the orders of the superior court.   On the sixth day of May, 1895, the defendants appeared by counsel and moved to dismiss the action for want of jurisdiction, and, subject to the ruling on that motion, to transfer the case to Polk county; and both motions were overruled.   Thereafter the defendants made return to the writ, and upon a final hearing, judgment was entered for the plaintiff, from which the defendants appealed. — *Reversed.*

*Milton Remley*, attorney general, and *D. F. Miller, Jr.*, for appellants.

*John E. Craig, James C. Davis*, and *A. Hollingsworth* for appellee.

GRANGER, J.—I. We have omitted many facts, important to the merits of the case, from the statement of facts. Some, not stated, important to the question of jurisdiction, will be noticed in connection with the particular questions to which they pertain. It will probably be necessary for us to consider—*First*, whether the action was brought in the wrong county; and, second, whether the superior court had jurisdiction of the subject-matter. Upon the question of the county in which the action should be brought, it will be remembered that the action of the board sought to be vacated, and the refusal to recognize the diplomas, occurred in Des Moines, in Polk county. The action was brought in Lee county. The jurisdiction in such cases is fixed by Code, section 2579, the important part of which is as follows: "Actions for the following causes must be brought in the county where the cause or some part thereof arose.  *  *  *  (2) An action against a public officer  *  *  * for an act done by him in virtue or under color of his office. * * *." Under the facts as we have given them, there could be no doubt that such an action must be brought in Polk county, for the alleged illegal acts that constitute the cause of action occurred in that county, and consequently the cause of action arose there. But it will be seen that the action may be brought in the county where the cause of action, or some part thereof, arose, and it is thought that some part of this cause of action arose in Lee county.

Some additional facts are important to determine that question. It appears that, prior to the action by the board, it appointed two of its members a committee to investigate the college, which committee proceeded to Keokuk, and secretly, and without knowledge on the part of the college, made an investigation, and determined certain facts,

which they embodied in a report, and the secretary
of the board, who was one of the committee, mailed a
copy of the report to each member of the board.   In
the letter transmitting the report to the members,
the secretary said: "The college is now, and has
been, regarded as in good standing by our board, and
as secretary I am directed to issue certificates to the
graduates of such colleges, unless there are reasons
to suppose that our schedule of requirements has
not been complied with."   The secretary then
asked, "in view of the report," whether he should
issue the certificates, or withhold them until the next
regular meeting of the board.   The members all
answered not to issue them.   The letter was written
by the secretary February 22, 1895, and the answers
were all as early as March 6, 1895.   The action of the
board declaring the college not in good standing was
March 28, 1895.   The petition charges the acts of the
committee, and those of the members in directing by
letter the withholding of the certificates, as illegal-
ities, which, with others, make the cause of action.
Neither the doings of the committee to investigate
the college, nor the acts of the members in directing
a withholding of certificates till the regular meeting,
were a part of the cause of action, within the meaning
of the law under consideration.   The petition, on its
face, shows, taking its material averments as true, for
the purpose of this question, and also taking as cor-
rect the conclusion that the board acted illegally, that
the illegal acts giving rise to an action were those on
the twenty-eighth of March, when the college was
declared or determined not to be in good standing.
The letters of the members were a mere temporary
personal direction to the secretary, and their effect
was superseded by the acts of the board thereafter.
They were not a part of the proceedings of the board,
nor were they intended as such.   They had no relation

to the final action of March 28, and the effect, from that time, and when the petition was filed, April 10, could in no way be a cause of action or a part thereof. As to the appointment of the committee and its acts, if both for the purpose of this question, are conceded to be illegal, which we do not decide, they are not the illegalities that go to, or give rise to the cause of action. They were entirely harmless until the board attempted to use or act upon the report. If the board did not consider, or disregarded the report, the claimed illegalities were immaterial. It was the action of the board in considering the report, if it did so, that constituted the illegality, in the sense of its being, in whole or in part, a cause of action. The work of the committee did not, of itself, harm the plaintiff. It was its use by the board. The mere fact that an incompetent witness is brought into court, if not used, will not constitute an illegality going to the validity of the judgment. It is the use of the witness by the court. The same is true of a deposition illegally taken and filed in court. If not used, it is harmless. If used, the judgment may be avoided because of its use. And, in a review of the action of the court, the appellate tribunal would fix the illegality that would reverse the judgment in the use of the deposition, which would be the cause of complaint. So, in this case, the cause of complaint, or the illegality that must vacate the order, if it is to be done, is the action of the board in considering or acting upon the report. It is urged that the state board of examiners is state wide, and as much a resident of Lee as of Polk county. Admit the claim, and it does not affect the result. The jurisdiction does not depend on residence, but on the fact of where the cause of action arose. The law provides that the board shall hold meetings in different parts of the state, so as to best accommodate applicants; so that a

cause of action is liable to arise in any county of the state, and the jurisdiction is not confined to Polk county, except when the act constituting the cause of action occurred in that county. We conclude that the proper venue of the action is in Polk county.

II. Had the superior court of Keokuk jurisdiction? This question goes to the subject-matter. It is urged that the superior court is one of limited jurisdiction and without jurisdiction in *certiorari* proceedings. The jurisdiction of the superior court is fixed in the following language, being a part of section 769, McClain's Code: "Said court shall have jurisdiction in all civil matters concurrent with the district court as now and as may hereafter be provided by law, excepting probate matters and actions for divorce, alimony and separate maintenance. It shall have exclusive original jurisdiction to try and determine all actions, civil and criminal, for the violation of city ordinances, and all jurisdiction conferred on police courts as now or as may hereafter be provided by law; and concurrent jurisdiction with justices of the peace, and writs of error and appeals may be taken from justices' courts in the township in which the court is held, and by consent of parties from any other township in the county." It will be seen that it gives concurrent jurisdiction in "all civil matters," with the exceptions specified. The exceptions specified are plain and unequivocal, and, under the rule, they are to exclude others, unless there is something in the language of the act to indicate a different legislative intent. The term "civil matters," as used in the act, is evidently intended to include all matters other than criminal; for, of the two, it is a more comprehensive expression than "civil actions," which is a term used in the Code, and defined in a way to limit its meaning. Code, section 2505. "Civil cases" is a term defined in the Code, and includes

actions and special proceedings. Code, section 2504. The term "civil matters" must be as broad in meaning as "civil cases." And, if so, it includes actions and special proceedings. In *Thompson v. Reed*, 29 Iowa, 117, it is held that certiorari is a special proceeding. Turning again to the act conferring jurisdiction on the superior court, we find nothing in the remaining language quoted to in any way change the effect of the general language giving jurisdiction. Its jurisdiction is concurrent in all civil matters, with the exceptions stated. The act then confers on the superior court exclusive jurisdiction in some particulars, and gives it concurrent jurisdiction with justices of the peace, and permits appeals to it from justices in the township. While the object of the proceeding is to review other proceedings, and to modify, revise, or correct, as the law requires, it is not an appeal, but a remedy where one does not exist by appeal, or under forms of the law. We conclude that the superior court has jurisdiction in such cases.

Because of our conclusion that the proper venue of the case is in Polk county, the motion to transfer to that county should have been sustained. The judgment is reversed, and the cause is remanded, with instructions to order the change.—REVERSED.