THE STATE ex rel. McANALLY v. GOODIER et al.

In Banc, March 30, 1906.

1. **PHYSICIAN: Certificate: Revocation.** Under the act of 1883 a physician who had been practicing medicine for a period of more than five years before the law was enacted, was not required to have a certificate from the State Board of Health to entitle him to practice medicine. But if such physician, of his own volition, applied for and obtained such a certificate, he may be cited by the board to appear and show cause why the certificate should not be revoked. And if the board finds him guilty of unprofessional or dishonorable conduct, it may revoke the certificate, leaving him in full possession of what the law gives him independent of the certificate.

2. ——: ——: ——: **Witnesses.** The State Board of Health is not a judicial body, and can issue no subpoenas for witnesses nor compel their attendance upon a hearing held to determine whether or not the certificate of a physician authorizing him to practice medicine shall be revoked. But the board cannot revoke the license except for cause and after the accused has had an opportunity to be heard.

3. **STATE BOARD OF HEALTH: When Courts Will Interfere.** The duties of the State Board of Health are of an administrative or ministerial character, and as long as its acts are within the scope of the exercise of a reasonable discretion it is free to act.

4. ——: ——: **Prohibition.** The writ of prohibition cannot be used to compel such a ministerial body as the State Board of Health to keep within the lines of its statutory duties. That writ goes only against a court or a tribunal exercising judicial functions. The writ of mandamus is the one usually employed to right the wrongs of a ministerial body.

### Prohibition.

WRIT DENIED.

*Hensley & Revelle* for relator.

(1) Relator having registered under the act of 1874, and the provisions of all subsequent regulation

having been made by express statutory provisions not applicable to physicians who registered under the act of 1874, the statute subsequently enacted, conferring on the State Board of Health the power to revoke certificates, cannot apply to relator. Laws 1874, p. 111; Laws 1877, p. 343, sec. 1; Laws 1883, p. 115, sec. 2; Laws 1901, p. 207, sec. 1; State v. Morgan, 96 Mo. App. 343; State v. Hathaway, 115 Mo. 37; State ex rel. v. State Board of Health, 136 Mo. 633. (2) The power of the State Board of Health to revoke certificates according to the present statute is bottomed upon a condition precedent, that condition being that they first give the accused an opportunity to be heard in his defense, and yet the statute does not provide any means for the board's fulfilling this condition. The statute is therefore incomplete and uncertain, and the power to revoke is unenforcible. (3) If by implication the board has the means and power to perform this condition and give the accused an opportunity to be heard in his defense, subpoena witnesses and compel their attendance and convict or acquit relator of the charges filed, then they are exercising judicial power, and the statute under which they operate is in violation of section 1, article 6, of the Constitution of Missouri. State ex rel. v. Ryan, 182 Mo. 349. (4) If respondents have the power under the statute to revoke relator's authority to practice medicine without first giving him an opportunity to fully defend himself against said charge, then the statute is obnoxious to section 4 of the Bill of Rights. (5) Respondents, in threatening to revoke relator's authority to practice medicine in Missouri and not having this power, are acting in excess of their jurisdiction, and prohibition is the proper remedy. State ex rel. v. Elkin, 130 Mo. 90; State ex rel. v. Talty, 166 Mo. 529; State ex rel. v. Hirzel, 137 Mo. 435; State ex rel. v. Eby, 170 Mo. 525; State ex rel. v. Lewis, 76 Mo. 370; State ex rel. v. Walls, 113 Mo. 42.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for respondents.

(1)   Judge Cooley says: "No one has any right to practice law or medicine except under the regulations the State may prescribe." Cooley on Torts, pp. 289 and 290; Tied. on Lim. on Police Power, sec. 87; Wharton on Medical Jur., sec. 434.   Our courts have held that various occupations, such as those of a plumber, a barber and a laundryman in certain parts of a city, are matters which the State may regulate, such regulation being within the police power of the State.   Barbier v. Connolly, 113 U. S. 27; People ex rel. v. Wardens, etc., 144 N. Y. 529; Singer v. State, 72 Md. 464; Ex parte Lucas, 160 Mo. 213. And it was also held that the practice of dentistry was not a right possessed by the citizen, but that the State could prescribe certain requirements before permitting the individual to engage in said calling.   Wilkins v. State, 113 Ind. 514; Goshnell v. State, 52 Ark. 228; State ex rel. v. State Bd. Med. Ex., 34 Minn. 387.   All the courts recognize the power of the State Board of Health to revoke a physician's license, but such revocation must be for some act that would in common judgment be deemed unprofessional or dishonorable, and not from mere caprice or without any cause. People ex rel. v. McCoy, 125 Ill.     ; State v. Schultz, 11 Mont. 429; State v. Hathaway, 115 Mo. 47.   The granting of a license to an applicant requires that the Board of Health shall pass on his moral as well as scientific qualifications; hence, it has been decided that said board will not be compelled to issue such a license, as its decision thereon involves a matter that is judicial in its nature.   State ex rel. v. Gregory, 83 Mo. 123; State ex rel. v. Med. Ex. Bd., 32 Minn. 324; People ex rel. v. Dental Exm., 110 Ill. 180; State ex rel. v. Lutz, 136 Mo. 633; State ex rel. v. St. Bd. of Health, 103 Mo. 28.   (2)   The same section of the statute that gives the State Board of Health the

right to inquire into the moral standing of an applicant gives that same board the right to revoke the license in the event he has been guilty of unprofessional or dishonorable conduct. Sec. 8514, R. S. 1899. That a State may pass a law providing that a physician, who is guilty of unprofessional or dishonorable conduct, may have his license revoked, has been decided by our courts of last resort. Hawker v. New York, 170 U. S. 189; Traer v. State Bd. Med. Ex., 106 Iowa 559; Wharton on Medical Jur., sec. 449; Meffert v. State Bd. Med. Reg., 66 Kan. 710. (3) Much is said in relator's brief in reference to the failure and refusal of the secretary of the State Board of Health to issue a subpoena for relator's witnesses. As no authority is given that officer to issue subpoenas, as the issuance of such process and the failure to obey same would not entitle relator to an attachment, the secretary was justified in refusing to issue the same. But even if the secretary was in error, even if he omitted to do an act which it was his duty to do, for that failure relator has another and adequate remedy. Such a failure would not deprive respondents of their right to proceed to hear the complaint, nor rob them of their jurisdiction to decide said case. No person, no matter how long he has been in the practice of his profession, has a vested right to practice medicine. People v. Phippin, 70 Mich. 6; State v. Dent, 25 W. Va. 1; Bd. of Med. Exm. v. Fowler, 50 La. Ann. 1373; Myer on Vested Rights, sec. 952; Dent v. W. Va., 129 U. S. 123.

VALLIANT, J.—Relator holds a certificate issued by the State Board of Health in 1883, which declares that he is legally authorized to practice medicine and surgery in this State. Charges of improper conduct have been preferred against him by a number of citizens of his county and the State Board of Health has cited him to appear before it to answer the charges

and show cause why his license or authority to practice medicine and surgery should not be revoked.

After service of the citation on relator he wrote a letter to the secretary of the board wherein he gave the names and places of residence of a number of witnesses whom he desired to have summoned to testify in his behalf and requested the secretary to issue subpoenas for them. According to the citation the board was to sit in Kansas City at the Midland Hotel, December 20, 1905. The witnesses for whom the relator desired to have subpoenas issued resided in Bollinger county. The secretary of the board replied to the letter saying that he had no authority to issue subpoenas and no fund out of which to pay witnesses for their attendance; that so far as the action of the board was concerned the only witnesses that would come before it would come voluntarily, and therefore relator would himself have to attend to the matter of procuring the attendance of his own witnesses. Relator says that after the receipt of the secretary's reply to his letter he tendered to the desired witnesses their legal fees for one day's attendance and their legal mileage, but that they declined to go without subpoenas; that he has a good defense against the charges, but cannot present it because he cannot procure the attendance of his witnesses. The prayer of his petition is that a writ may issue directed to the respondents, composing the State Board of Health, prohibiting them from proceeding in the matter.

The return filed by respondents admits substantially the facts stated, and says that in 1883 relator appeared before the board and applied for a license to practice medicine and the same was issued to him; that the respondents composing the board have authity under the law to investigate those charges, to ascertain if they be true or false, and if found to be true to revoke the license, or if to be false to acquit him, and this they purpose to do.

In his reply to the return the relator says, true it is he did obtain from the State Board of Health the license or certificate in question, but that it was not issued to him on his showing of a diploma or on an examination of him by the board, but on the fact that for a period of five years or more before the act of the General Assembly entitled, "An Act to regulate the practice of Medicine and Surgery in the State of Missouri," approved April 2, 1883, had gone into effect, he had been and then was a practicing physician in this State, and was by the terms of the act excepted from its requirements. The above-stated facts are undisputed.

The charges against relator filed before the State Board of Health by citizens of Marble Hill where he resides, were to the effect that he was then and for several years had been in the continuous and almost exclusive occupation of selling intoxicating liquors without a license and without a prescription in a drugstore kept by him; that he sells liquors to be drunk on the premises; he sells every day in the week, Sunday included, and that he sells to minors, that he conducts the business in open defiance of the law, and that it constitutes a public offense.

It appears from a stipulation filed herein that relator had been practicing medicine in this State since 1867, and duly registered as such under the act of 1874, which required such registration. His affidavit on file says that he applied to the State Board of Health in 1883 for the license or certificate which was issued to him, because he had been advised (he does not say by whom) that it was necessary to have such a certificate, not knowing then, as he has since learned and now asserts, that he was entitled to practice without such certificate.

Under the act of 1874 no one was to be allowed to practice medicine or surgery in this State unless he had been graduated from a medical college or university with the degree of doctor of medicine, and he was re-

quired to register his diploma in the county of his residence. But that act excepted from its requirements men who were already engaged in the practice. [Laws 1874, p. 111.]

Under the act of April 2, 1883, it was required of one who shall practice medicine or surgery that he should be a graduate in medicine and exhibit his diploma for examination and verification to the State Board of Health or if he should not be a graduate he should stand an examination before the State Board of Health touching his learning, qualification and fitness to practice that profession.

The act also required the State Board of Health to issue certificates to those measuring up to the requirements of the law; the board were to have two forms of certificates, one for those who were graduates of medical colleges, and the other for those found on examination by the board to possess the necessary qualifications. The holders of these certificates were required to have them registered in the county clerk's office of the county of their residence.

The eighth section of that act, now section 8514, Revised Statutes 1899, is: "The State Board of Health may refuse certificates to individuals guilty of unprofessional or dishonorable conduct, and they may revoke certificates for like causes, after giving the accused an opportunity to be heard in his defense before the board."

In the eleventh section of the act, now section 8517, Revised Statutes 1899, is this *proviso*: "the provsions of this article shall not apply to those persons who have been practicing medicine five years in this State." Under that *proviso* relator contends that the respondents who now compose the State Board of Health have no jurisdiction over him, no authority to try him on the charges mentioned.

Under the act of 1883, the relator was not required to have a certificate from the State Board of Health to

entitle him to practice medicine, because he had been practicing for a period more than five years before the law was enacted. That act prescribed but two forms of certificate, one for the graduate of a medical college, the other for the man found qualified by examination by the board. The relator came within the description of neither the one nor the other, he belonged to a class expressly excepted from the operation of the statute. But he was not satisfied to stand on his legal exemption, he wanted a certificate from the State Board of Health to register and to show. Therefore, he applied to the board and obtained a certificate under its official seal and the signature of its officers and members, declaring that he was "legally authorized, under the provisions of the act to regulate the practice of medicine and surgery in the State of Missouri, approved April 2, 1883, to continue such practice." It is to show cause why the board ought not to revoke that certificate that the relator has been cited to appear before the board.

Under section 8514 the board is not required to issue a certificate to every one who comes with a diploma or who possesses the necessary learning to pass an examination, but in spite of his diploma or of his learning the board may refuse him a certificate if he is guilty of unprofessional or dishonorable conduct. The certificate, therefore, implies not only that the holder is learned in the science, but that he is, from a moral or ethical standpoint, worthy to be trusted.

This relator has seen fit of his own volition to apply to the board for such a certificate, has obtained it, has published it by having it registered in two counties, still holds it, and now maintains that the board has no right to revoke it, even if it should find after investigation that he is morally unworthy to exercise the high calling, because he says the board had no right to issue it in the first place.

A complaint of that kind does not make a very persuasive appeal for a writ which, after all, is within

the sound discretion of the court to issue or refuse, independent of strict technicality, as the very right and justice of the case requires.  In this case if the board on investigation should find the relator guilty of the charges preferred, the utmost it could do would be to cancel the certificate that it has itself issued, leaving the relator in full possession of what he now says the law gives him, independent of the board, that is, the right to practice medicine on his own merits, but it would not leave him armed with this certificate of good character from the State Board of Health.  The relator has no right to hold that certificate if he is unworthy of the confidence it invites.

The gravamen of the complaint in the petition is that the board is going to try him without exercising compulsory process to bring before it the witnesses he needs for his defense.  The State Board of Health is not a court, is not a judicial tribunal; it can issue no writ, it can try no case, render no judgment; it is merely a governmental agency, exercising ministerial functions; it may investigate and satisfy itself from such sources of information as may be attainable as to the truth or falsity of charges of misconduct against one holding one of its certificates, but its investigation does not take on the form or character of a judicial trial.  The law does not contemplate that the technical rules of evidence applicable to a judicial trial will be strictly followed or that compulsory attendance of witnesses will be made.  It contemplates that a plain, honest, common sense investigation shall be made, with good faith and as thorough as may be with the light of such evidence on either side as is obtainable without process and with the means at hand; much like the investigation that fair-minded intelligent men would make in their own business concerning the alleged misconduct of one of their employees, with this difference only, that the board cannot revoke the license except for

cause and after the accused has had an opportunity to be heard.

The statute above quoted says the board may refuse to issue the certificate, or may revoke it after it has been issued, if the man is unworthy; this implies that the board may have had some information of misconduct of an applicant which would justify a refusal to issue the certificate, or after the certificate is issued that would justify its recall, and in either case the board is authorized to act "after giving the accused an opportunity to be heard." Those are the only words that suggest a trial and they fall far short of a judicial trial. To guard and protect the health and welfare of its people the State must have its ministerial agents or officers and intrust them with power; if every administrative act that looks to the enforcement of the law should be required to be reduced to the compass of a lawsuit and be put into effect only after a court had at the end of a formal trial stamped its judgment upon it, the government would make slow progress. There must be trust reposed somewhere and power to execute the law. The General Assembly has taken great care to secure trustworthy men to perform the duties that are devolved on the State Board of Health. Section 7519 provides that: "At least five (of the seven) of said board shall be physicians in good standing, and of recognized professional and scientific knowledge, and graduates of reputable medical schools and they shall have been residents of the State for at least five years next preceding their appointment."

The duties of the board are of an administrative or ministerial character, and therefore as long as its acts are within the scope of the exercise of a reasonable discretion it is free to act. [State ex rel. v. Gregory, 83 Mo. 123.] If perchance, through a misunderstanding of the law, the board should refuse to perform a given duty, the writ of mandamus will right the wrong. [State ex rel. v. Lutz, 136 Mo. 633.] But the writ of

prohibition does not go against such a body; it goes only against a court or a tribunal exercising judicial functions.

We have very recently held that a writ of prohibition would not go against the Board of Election Commissioners, because although it exercised a large discretion (in the case there under review having to investigate and find from the evidence and decide which of two antagonistic sets of claimants was entitled to recognition as the lawful committee of a political party), yet it was the act of a ministerial and not a judicial body and the act to be performed was not a judicial act. [Kalbfell v. Wood, 193 Mo. 675.]

We have held in reference to a county court, which is a tribunal possessing judicial as well as administrative or executive powers, that in the exercise of the latter the court was not acting in a judicial capacity and therefore the writ of prohibition would not run against it. [State ex rel. v. Clark County Court, 41 Mo. 44; followed in Casby v. Thompson, 42 Mo. 133; Vitt v. Owens, 42 Mo. 512, and Hockaday v. Newsom, 48 Mo. 196.] State ex rel. v. Elkin, 130 Mo. 90, was a suit for a writ of prohibition against a county court, and the distinction was again drawn between the two kinds of functions that such a court exercised, and it was held that whilst the writ of prohibition would not go to restrain its action in a ministerial capacity it would go if the court assumed a judicial function that did not belong to it. The court in that case, per BARCLAY, J., said (l. c. 105): "The writ of prohibition is applicable whenever judicial functions are assumed which do not rightfully belong to the person or court assuming to exercise these functions. It is the nature of the act which determines the propriety of the writ." The language there used is broad enough to mean that if any person or tribunal, though possessing no judicial character at all, should assume to exercise a judicial func-

tion, the writ of prohibition would be a proper process to prevent the action. That language, however, cannot be taken as a decision of the court to that extent, because the court was reviewing the action of a county court, which, as we have seen, has a judicial side to its composition, and the question then before this court was whether the act of the county court there in question was one that pertained to its judicial or its administrative side. In such case, of course, the nature of the act under review was decisive of that question.

But if we should apply the language just quoted in its broadest sense to the facts of the case at bar, it would not bring the respondents within the range of a writ of prohibition, because the act complained of and sought to be prohibited is not judicial in its character.

In Higgins v. Talty, 157 Mo. 280, charges of keeping a disorderly house had been preferred against a dramshop-keeper, and Higgins, the excise commissioner, had cited him to show cause why his license should not be revoked. The dramshop-keeper applied to a circuit judge for a writ of prohibition against the excise commissioner to prohibit him from trying the accused on the charges, because he said to try him was to exercise a judicial function which under the Constitution could be exercised only by a court. This court, in an opinion by Burgess, J., said (l. c. 291): "The proceeding was merely by way of investigation, and was in no sense a trial;" that the excise commissioner in proceeding to investigate the charges "was not acting judicially, but under the power conferred upon him by statute with respect to the subject-matter over which he has exclusive control."

In State v. Hathaway, 115 Mo. 36, it was expressly decided that the State Board of Health was not a judicial body and that the powers conferred on it by statute were not judicial in character. After referring to the cases of State ex rel. v. Gregory, 83 Mo. 123, and State ex rel. v. State Board of Health, 103 Mo. 22, in which

were expressions to the effect that the duties of the board were *quasi-* judicial, it was said by the court, per GANTT, J.: "There is nothing in either of them which justifies the charge that this court by its language in those cases recognized that the power conferred upon the board of health in any manner trenched upon that jurisdiction conferred by our Constitution upon the judiciary of this State." And later in the same opinion it is said: "A judicial duty within the meaning of the Constitution is such a duty as legitimately pertains to an officer in the department designated by the Constitution as judicial. And we can but commend in this connection the language of the same court in Flournoy v. City, 17 Ind. 169: 'An act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act.'"

In the case now before us for judgment we hold that the State Board of Health is not a judicial body, that it has the power to revoke a license or certificate issued by it if after investigation in which the licensee is afforded an opportunity to be heard it is satisfied that he has been guilty of unprofessional or dishonorable conduct, and that in conducting such investigation (or trial if that term is preferred) it is not assuming to exercise a judicial function; therefore, a writ of prohibition does not lie to prevent the investigation.

Writ denied. *Brace, C. J., Gantt, Burgess, Fox* and *Lamm, JJ.,* concur; *Marshall, J.,* concurs in the result.