HANSON *v.* MICHIGAN STATE BOARD OF REGISTRATION IN MEDICINE.

1. PHYSICIANS AND SURGEONS—REVOCATION OF LICENSE—CERTIORARI —QUESTIONS REVIEWABLE.

    On certiorari to review revocation of physician's license by State board of registration in medicine, board's finding of facts based on competent evidence is binding on court.

2. SAME—POLICE POWER—JUDICIAL POWER.

    Revoking physician's license by board was exercise of police power, and not strictly exercise of judicial power (2 Comp. Laws 1915, § 6726).

3. SAME—PROOF BY DEPOSITION PERMISSIBLE.

    In revoking physician's license, board is not required to proceed in strict accordance with rules applicable to judicial tribunals, so that, unless otherwise provided by statute, requisite proof may be by deposition or affidavit.

4. SAME—COMPULSORY PROCESS NOT INDISPENSABLE.

    In proceedings to revoke physician's license, right to compulsory process is not indispensable.

5. SAME—LICENSE MAY NOT BE REVOKED ARBITRARILY.

    Generally, action of board in revoking physician's license must not be arbitrary, but must be for cause only, and based on specific charges made and evidence submitted.

6. SAME—RIGHTS MAY BE WAIVED.

    In proceedings to revoke license, physician has right, unless waived, to notice, hearing, reasonably definite statement of charge, cross-examination of witnesses, to produce witnesses, and fair consideration and determination of evidence.

---

Validity of statute providing for revocation of license of physician or surgeon, see annotation in 5 A. L. R. 94.

7. SAME—HEARING LEGAL.

In proceedings to revoke license, physician *held*, to have had such hearing as he was entitled to in law.

8. SAME—EVIDENCE—SWORN STATEMENTS ADMISSIBLE IN ABSENCE OF OBJECTION—CROSS-EXAMINATION.

In proceedings to revoke physician's license, sworn statements of witnesses are competent to establish charge, in absence of objection thereto or demand for cross-examination.

9. SAME—ACQUIESCING IN PROCEEDINGS WAIVED RIGHTS.

In proceedings to revoke license, physician waived rights by failure to assert them, and by acquiescing in proceedings taken.

10. SAME—PREVIOUS CONVICTION NOT NECESSARY TO REVOCATION OF LICENSE.

That physician had not first been convicted in criminal court is no bar to proceedings by board to revoke his license.

11. SAME—STATUTES—PRESUMPTIONS.

That subdivision of statute relating to revocation of physician's license does not expressly provide for notice, as does another subdivision, is of no consequence, since notice and fair hearing is implied as indispensable part of enactment (2 Comp. Laws 1915, § 6726, subds. 6, 7).

12. SAME—COMPOSITION OF BOARD—DE FACTO BOARD—QUORUM.

That medical registration board of ten members, revoking physician's license, contained seven members from regular school of medicine instead of five as provided by statute, would not render its action void, since it is *de facto* board, and especially where its action was unanimous, and vote of seven was sufficient (2 Comp. Laws 1915, § 6724).

WIEST, MCDONALD, and POTTER, JJ., dissenting.

Certiorari by Joseph H. Hanson to Michigan State Board of Registration in Medicine to review its action in revoking his license to practice medicine and surgery. Submitted December 26, 1930. (Calendar No. 35,398.) Decided January 23, 1931. Rehearing denied April 7, 1931.

*Kenneth M. Stevens,* for plaintiff.

*Wilber M. Brucker,* Attorney General, and *Joseph A. Gillis,* Assistant Attorney General, for defendant.

NORTH, J.   This is certiorari to review the action of the Michigan State board of registration in medicine in revoking plaintiff's license to practice medicine and surgery.   Complaint is made that:

1.   Proper notice of the exact charges preferred was not given to plaintiff.

2.   The board's action was not based upon sufficient and proper evidentiary facts.

3.   The hearing was unfair, arbitrary, and not in accordance with the fundamental rules of evidence.

4.   The board as constituted does not conform to statutory requirements, and therefore is without power to act.

Section 6726, 2 Comp. Laws 1915 (2 Comp. Laws 1929, § 6739), vests in the board of registration the power "to refuse to   *   *   ,   *   continue" the license of any physician to practice who is guilty of "grossly unprofessional   *   *   *   conduct" which is declared by the statute to include within its meaning (among other unprofessional acts enumerated): "The obtaining of any fee on the assurance that an incurable disease can be permanently cured." This record discloses that numerous complaints of alleged unprofessional conduct on the part of plaintiff had come to the attention of the medical registration board.   These complaints for the most part were contained in letters and embodied much that was of a hearsay character.   An investigation by the board led to interviews between some of its members and plaintiff, and at least on one such occasion plaintiff's attorney was also present. Thereafter notice that charges of unprofessional conduct had been made against him was served upon plaintiff.

At the time and place designated in the notice plaintiff and his attorney appeared.   A hearing was

had before the full membership of the board. The originals of four complaints were shown to plaintiff and his attorney. Only that of Anthony Klette was under oath, and as no testimony seems to have been taken in support of the other complaints, that of Klette alone merits consideration. In an affidavit dated January 20, 1930, Mr. Anthony Klette of Detroit charged that his son had been afflicted with *dementia præcox* for four or five years, and that upon taking him to Dr. Hanson the latter told the affiant "that he would bring him (the son) back to a perfect mental state and that he proposed to do this by the administration of serum and certain liquid medicines, and he agreed to do this for a total payment of $500." Two hundred and fifty dollars was paid down, the balance to be paid at a future date. The affidavit further recites: "For this amount of money he assured me that my son would be completely cured."

At the hearing, evidently for the purpose of advising plaintiff and his counsel of the specific complaints made against the doctor, there was read the "report of the committee on registration and standards," which committee is composed of five members of the board. Touching the complaint under consideration, this report contains the following:

"(1) Complaint filed by Mr. A. Klette, 5893 Hazlett avenue, Detroit, stating that Dr. Hanson promised to cure his son of *dementia præcox* for the sum of $500. This amount to be paid $250 down, and the balance later. After 20 months treatment the boy was unimproved. After this complaint was filed, Dr. Hanson returned the $250 to Mr. Klette."

The doctor's attorney made a statement to the board at this hearing, which included the following:

"I went to see Dr. Warnshuis (secretary of the board) and asked him about what the charges were. I supposed they were written charges, but I understand there are no written charges and Dr. Warnshuis told me of the complaints that were said to have been made and I have taken this up with my client and we are here prepared to meet those. I would be very glad to know what it is we have to meet, and glad to do all I can to help you gentlemen. * * * I will be very glad, if you gentlemen care to hear him (Dr. Hanson), to find out from him the details of these different cases. I think that is reasonable. So, if you will just take a seat here, if there will be no objection gentlemen."

Of the specific charge we are reviewing, Dr. Hanson voluntarily testifying as a witness in his own behalf stated:

"Dr. Warnshuis, and, I believe, Dr. McLaughlin, were both there at the time I was called to your (plaintiff's attorney) office, and you asked me whether I had treated a man (by) the name of Klette and I told you yes, and you asked me what the man had, and I told you *dementia præcox,* and you asked me whether the condition was curable, and I said absolutely no, under no condition; *dementia præcox* is not curable."

As noted above, after complaint was made, Dr. Hanson returned the $250 paid him by Mr. Klette. This was done with the understanding that the parties concerned would not make complaint against the doctor. No other witnesses testified relative to the merits of the Klette complaint. The return of the board to this court, which is not traversed, em-

bodies from its record of this hearing the following:

"Accused appeared in person and with his attorney, and was given ample opportunity to present to the board such statements, evidence and witnesses as to why he was not guilty of violations as charged. * * *

"Upon termination of the open hearing, the board went into executive session. After careful weighing and reviewing the evidence presented, the finding of the board of registration in medicine was that Dr. Hanson had been guilty of grossly unprofessional and dishonest conduct, obtaining fees on the assurance that an incurable disease could be permanently cured, making grossly improbable statements, and violating the various provisions of subsection 6 of section 3, of the medical practice act (2 Comp. Laws 1929, § 6739)."

By the unanimous action of the full board Dr. Hanson's license to practice was thereupon revoked. About four months later petitioner changed counsel and a petition in behalf of the doctor was filed with the board seeking rescission of its order revoking the doctor's license. This petition was considered and denied by the unanimous action of the board.

In reviewing by certiorari, the board's finding of facts based on competent evidence is binding upon the court. In revoking plaintiff's license the board's action was an exercise of police power and not, at least in a strict sense, the exercise of judicial power. *Kennedy* v. *State Board,* 145 Mich. 241, 245 (9 Ann. Cas. 125). The board was not required to proceed in strict accordance with rules applicable to judicial tribunals. In a proceeding of this character, unless otherwise provided by statute, the requisite proof may be by deposition (*State, ex rel. Hurwitz,* v. *North,* 304 Mo. 607 [264 S. W. 678]), or by affidavit

(*Mathews* v. *Hedlund,* 82 Neb. 825 [119 N. W. 17]). The right to compulsory process is not indispensable. *State, ex rel. McAnally,* v. *Goodier,* 195 Mo. 551 (93 S. W. 928). What is required of officers and boards in the exercise of powers of removal or revocation, such as are under consideration, is considered in numerous adjudicated cases. We cite only the following: *Dullam* v. *Willson,* 53 Mich. 392 (51 Am. Rep. 128); *Munk* v. *Frink,* 81 Neb. 631 (116 N. W. 525, 17 L. R. A. [N. S.] 439); *State, ex rel. McAnally,* v. *Goodier, supra.*

"In general the action of a board or officer in revoking a license must not be arbitrary. It must be for cause, only, and based on specific charges made and evidence submitted." 17 R. C. L. p. 555.

Unless the right is waived, the person charged is at least entitled to:

(1) Notice of a time and place of hearing.

(2) A hearing before a properly authorized body.

(3) A reasonably definite statement of the charge or charges preferred against the accused.

(4) The right to cross-examine the witnesses who testify against him.

(5) The right to produce witnesses in his own behalf.

(6) A full consideration and a fair determination according to the evidence of the controversy by the body before whom the hearing is had.

Tested by the applicable rules, we conclude that plaintiff herein had such a hearing before the board of registration in medicine as he was entitled to in law. He was given the required notice, he appeared with his counsel, and was informed of the charges made against him and embodied in the records of the board. His counsel announced: "We are here

prepared to meet'' the charges made. Mr. Klette's affidavit in support of the charge was before the board and was submitted to the accused and his attorney. The accused voluntarily testified in his own behalf. No request was made by him or by his attorney for an opportunity to produce or that the board should call other witnesses who had knowledge of the charge preferred. Nor was there a request to cross-examine Mr. Klette, whose affidavit in support of the charge was before the board. As noted, the board deliberated and found Dr. Hanson guilty of the charge, *i. e.,* ''obtaining fees on the assurance that an incurable disease could be permanently cured.'' Klette's affidavit together with the doctor's admissions sustained the finding. There was no demand that Klette be produced for cross-examination. Where there is no demand for cross-examination and no objection made, the sworn statements of witnesses are competent to establish the charge. *Mathews* v. *Hedlund, supra*; *Traer* v. *State Board of Medical Examiners*, 106 Iowa, 559 (76 N. W. 833). Except as exercised, defendant's rights were waived by his failure to assert them and by acquiescing in the proceeding taken. The record discloses nothing that would justify us in disturbing the board's determination.

Appellant's contention that the board had no power to hear charges and revoke the doctor's license to practice until he had first been convicted in a court of criminal jurisdiction is without merit. The statute is not reasonably subject to such construction. Nor is it of consequence that the sixth subdivision of section 3 of the act (2 Comp. Laws 1915, § 6726 [2 Comp. Laws 1929, § 6739]) does not expressly provide for giving notice of the hearing to the one charged, as does the seventh sub-

division. It may be noted that prior to the amendment by Act No. 368, Pub. Acts 1913, the provisions of these two subdivisions were embodied in one. If the provision for "a fair hearing" were entirely omitted from the above subdivision, it would still be implied and considered as an indispensable part of the enactment. As stated by Justice Champlin in *Dullam* v. *Willson, supra*:

"It is to be understood as required that the tribunal, to which is committed the duty of inquiring and determining, shall give opportunity to the subject to be heard in support of his innocence or his capacity."

The remaining question is presented by appellant's contention that the defendant board is without power to act because its membership does not conform to the statutory requirement (2 Comp. Laws 1915, § 6724 [2 Comp. Laws 1929, § 6737]), which specifies that this board of ten members shall be composed of not more than five persons from the regular school of medicine, not more than two from the homeopathic, not more than two from the eclectic, and not more than one from the physio-medical school. The board is composed of seven members of the so-called regular school, two of the homeopathic, one of the eclectic; but none from the physio-medical. Plaintiff is of the regular school. We think the board must be held to be a *de facto* board, and in any event since the action taken in the instant case was unanimous, and the statute (2 Comp. Laws 1915, § 6724 [2 Comp. Laws 1929, § 6737]) provides that the business of the board "shall be transacted by and receive the concurring vote of at least seven members," appellant's contention cannot be sustained.

The relief sought by plaintiff is denied, and his petition dismissed, with costs to defendant.

BUTZEL, C. J., and CLARK, SHARPE, and FEAD, JJ., concurred with NORTH, J.

POTTER, J. (*dissenting*). Plaintiff and appellant, claiming his license to practice medicine was irregularly and illegally revoked, brings certiorari against the Michigan State board of registration in medicine, to review its action in so revoking it. He claims respondent board is illegally constituted; that no specific charges were made against him, nor served upon him, and no legal evidence was introduced against him, and the proceedings for revoking his license were irregular, illegal, and void. The respondents return that petitioner and his attorney were given ample opportunity to present to the board such statements, evidence, and witnesses as to why he was not guilty of the violations as charged, and it claims this was sufficient. When petitioner was licensed to practice medicine, there was conferred upon him something akin to a franchise, which was valuable, and in the nature of property, which could not be taken from him without due process of law.

In *Mathews* v. *Hedlund,* 82 Neb. 825, 830 (119 N. W. 17) it is said:

"It is urged that one cannot have a property right in a license to practice medicine; that it is within the police power to name the conditions upon which such a permit shall issue and may be enjoyed, and that the holder thereof takes the privilege with the condition annexed that his license may be revoked at any time by the power that gave it. There is much force in the argument, and many authorities may be cited to sustain it, but we are of opinion that after a license has been issued the right

thereunder to practice medicine is a valuable right, and one that may not be taken away without good cause; that, if such license is canceled by a board of health, it must be upon proper charges, with opportunity to appear and defend by the introducing of evidence and the cross-examination of those witnesses who testify against the physician at the hearing. *Munk* v. *Frink,* 75 Neb. 172 (106 N. W. 425); *Hewitt* v. *State Board of Medical Examiners,* 148 Cal. 590 (84 Pac. 39, 3 L. R. A. [N. S.] 896, 113 Am. St. Rep. 315, 7 Ann. Cas. 750); *Smith* v. *State Board of Medical Examiners,* 140 Iowa, 66 (117 N. W. 1116). The hearing in the instant case did not involve the determination of the learning or professional skill of the defendant, but whether he had performed a criminal operation upon the person of a patient. Under the circumstances of this case the revocation of defendant's license, as reasoned by Mr. Commissioner Ames in *Munk* v. *Frink, supra,* was analogous to a forfeiture, and involved the exercise of judicial or *quasi*-judicial power, within the meaning of section 580 of the code. *Board of Aldermen* v. *Darrow,* 13 Colo. 460 (22 Pac. 784, 16 Am. St. Rep. 215); *State, ex rel. Hart,* v. *Common Council of City of Duluth,* 53 Minn. 238 (55 N. W. 118, 39 Am. St. Rep. 595); *People, ex rel. Kasschau,* v. *Board of Police Commissioners,* 155 N. Y. 40 (49 N. E. 257); *People, ex rel. Smith,* v. *Hoffman,* 166 N. Y. 462 (60 N. E. 187, 54 L. R. A. 597); *College of Physicians & Surgeons* v. *Guilbert,* 100 Iowa, 213 (69 N. W. 453).''

In *Dullam* v. *Willson,* 53 Mich. 392 (51 Am. Rep. 128), the question of the governor's right to remove officers under the constitutional authority conferred upon him, by amendment of the Constitution of 1850, was involved. It is said:

''He is not authorized to exercise the power at his pleasure or caprice. It is only when the causes

named exist that the power conferred can be exercised. It follows as a necessary consequence that the fact must be determined before the removal can be made. It is also clear that the fact must be determined by some tribunal invested with judicial power, for a determination whether specified causes exist is the exercise of judicial functions. Judicial determination of facts must rest upon and be preceded by notice, proof and hearing.''

This case has been followed by subsequent decisions of the court. Not only was the petitioner entitled to a specific statement of the charges made against him, but such charges must have been supported by evidence. No evidence was introduced against him. The burden was upon respondent to introduce evidence to show petitioner was not entitled to practice. An order revoking his license cannot legally be based upon hearsay, rumor, the *ex parte* affidavits of disgruntled patients, nor can it be made to gratify jealousy, humor, or caprice. Petitioner was not given the opportunity to cross-examine witnesses against him.

''The benefit of cross-examination is an essential condition to the reception of direct testimony.'' *Heath* v. *Waters*, 40 Mich. 457.

The testimony of any witness which the petitioner did not have a right to cross-examine was not evidence but a mere *ex parte* statement. The rule is thus stated in 48 C. J. p. 1103:

''In a proceeding before a board to revoke a license or certificate of a physician or dentist, the holder of the license' or certificate must be given an opportunity to introduce evidence and cross-examine the witnesses who testify against him; and a statute governing the proceedings is unconstitutional as denying due process of law where it does

not make any provision whereby the attendance of witnesses can be required or their testimony procured.''

Both the State and the United States Constitutions provide that no one may be deprived of life, liberty, or property without due process of law. In this case, no written complaint was filed against the petitioner; no specific charges were made against him; he was not furnished with the copy of the charges which he was to answer; no opportunity for filing a written answer to a verified complaint was given him; no testimony was introduced against him; he was not given the right to cross-examine the witnesses against him. The procedure was irregular, illegal, and void. Plaintiff is entitled to the relief prayed.

WIEST and McDONALD, JJ., concurred with POTTER, J.