Munk v. Frink.

---

ERICK C. MUNK, APPELLANT, V. J. L. FRINK ET AL., APPELLEES.

FILED MAY 7, 1908.   No. 15,029.

1. **Physicians:** REVOCATION OF LICENSE: COMPLAINT. "A complaint filed before the state board of health for the purpose of procuring an order revoking the license of a physician is sufficient if it informs the accused, not only of the nature of the wrong laid to his charge, but of the particular instance of its alleged perpetration." *Munk v. Frink*, 75 Neb. 172, reaffirmed and followed.

2. ———: ———: TRIAL. In a trial under such a complaint it is not necessary that the proceedings should be conducted with that degree of exactness which is required upon a trial for a criminal offense in an ordinary tribunal of justice.

3. ———: ———: ———. Proceedings by the state board of health to revoke a physician's license for cause are summary in their nature, and are triable before the board without the intervention of a jury.

4. ———: ———: CONDITIONS PRECEDENT. A trial and conviction in a court of competent jurisdiction is not a condition precedent to a proceeding by the state board of health against a physician to revoke his license for any of the causes provided by statute.

5. ———: ———: PLEADING. In a hearing by the state board of

health of charges against a physician for procuring or aiding or abetting in procuring a criminal abortion, it is not necessary to either allege or prove that the woman had become quick. It is not the murder of a living child which constitutes the offense, but the destruction of gestation where such destruction is not necessary in order to preserve the life of the woman. The moment the womb is instinct with embryo life and gestation has begun the crime may be perpetrated.

6. ———: ———: POWERS OF STATE BOARD OF HEALTH. The power conferred upon the state board of health to revoke a physician's license for cause is an administrative and not a judicial function, and the limit of judicial interference in such cases is to protect the accused in his right to a hearing upon specific charges after reasonable notice of the time and place of hearing has been given, and a full opportunity afforded him to present his defense to such charges and against a conviction, unless upon competent evidence.

7. ———: ———: FINDINGS: EVIDENCE. In such a case, when the state board of health has so proceeded and taken testimony, and given the respondent full opportunity to appear in person or by counsel to cross-examine the witnesses against him, and to introduce testimony in his own behalf, and has passed upon the sufficiency of the evidence so taken, the findings of the board as to the sufficiency of the evidence to sustain the charges will be upheld, unless it appears that there is no evidence to sustain such findings.

8. ———: ———: ———. Evidence examined, and *held* that the state board of health proceeded in the present case fairly and openly, and within the powers granted to it by the legislature; that appellant was given proper and sufficient notice of the hearing and full opportunity upon such hearing to vindicate himself from the charges preferred against him; and that the findings and judgment of the board are in all respects regular and in accordance with the statute under which it acted.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*J. J. Sullivan, A. M. Post* and *H. Halderson,* for appellant.

*W. T. Thompson, Attorney General, Halleck F. Rose* and *H. C. Vail, contra.*

FAWCETT, C.

This case is before us for the second time. The opinion on the first hearing (75 Neb. 172) gives a full and accurate statement of the nature of the case. When the case was remanded to the district court, that court considered it upon its merits, and affirmed the findings of the state board of health revoking appellant's license to practice medicine, surgery, and obstetrics in this state; and to review such judgment this appeal is prosecuted.

The former opinion in this case and our opinion in *State v. Walker,* 75 Neb. 177, have settled adversely to appellant his contention that the complaint under which the state board of health proceeded is insufficient. It is argued that our holding on the former hearing that the complaint was sufficient is not the law of the case, for the reason that the reference to that question in the former opinion is mere dictum. In this contention we are unable to concur. Even if we were to hold that the discussion of the proposition by Commissioner AMES in that case is *dictum,* we would adopt his reasoning now in holding that the complaint is sufficient, and would support such holding by the authorities cited by Judge AMES. While it is true some courts have held that in a case of this kind the offense must be alleged with the same certainty and the evidence must be of the same degree as would be necessary in a criminal prosecution, the overwhelming weight of authority is against that idea. One of the strongest cases relied on by appellant in support of that contention is *Skeen v. Craig,* 31 Utah, 20, 86 Pac. 487; but an examination of that case will show that the only reason the court so held was because section 4575 of the act under which that case was being prosecuted provided that "the trial * * * shall be conducted * * * in the same manner as the trial of an indictment or information for a felony." It will be seen, therefore, that that case could not be considered as an authority in this. Our holding in the former opinion that "a com-

plaint filed before the state board of health for the pur-
pose of procuring an order revoking the license of a
physician is sufficient if it informs the accused, not only
of the nature of the wrong laid to his charge, but of the
particular instance of its alleged perpetration," is well
sustained; and the contention of appellee that proceedings
before the board for revocation of a physician's certificate
are not to be conducted and carried on in conformity to
the technical rules of procedure obtaining in courts of
justice is fully supported by the following authorities:
*Meffert v. State Board,* 66 Kan. 710; *State v. Common
Council,* 53 Minn. 238; *Traer v. State Board of Medical
Examiners,* 106 Ia. 559; *People v. Thompson,* 94 N. Y. 451;
1 Dillon, Municipal Corporations (4th ed.), sec. 255. In
*Traer v. State Board of Medical Examiners, supra,* it is
said: "The statute does not prescribe the practice to be
followed in cases instituted for the revocation of certifi-
cates; and although it may, when practicable, follow
somewhat the methods of the courts, yet, from the nature
of the board and the character of the duties it is required
to perform, a more flexible practice than that allowable
in the courts must, of necessity, be followed in many
cases." In *State v. Common Council, supra,* the court
say: "We also recognize the fact that while in the exercise
of this power their proceedings are *quasi* judicial, and
hence reviewable by the courts, yet they are not courts,
but essentially legislative and administrative bodies, and
that their action should be considered in view of their
nature and the purposes for which they were organized,
and not tested by the strict legal rules which prevail in
trials in courts of law. Hence, if such a body has kept
within its jurisdiction, and the evidence furnished any
legal and substantial basis for their action, it ought not
to be disturbed for any mere informalities or irregulari-
ties which might have amounted to reversible error in
the proceedings of a court. To apply any other rule to
the proceedings of such bodies would be impracticable,
and disastrous in the extreme to public interests." In

*People v. Thompson, supra,* it is said: "The charges as made were sufficient to answer the purpose intended, and were within the requirements of the statute under which the proceeding was had. It was not necessary that the proceedings should be conducted with that degree of exactness which is required upon a trial for a criminal offense in an ordinary tribunal of justice, and it cannot be said that the charges made were insufficient." In *Meffert v. State Board, supra,* it is said: "The provisions of the act creating the board plainly indicate that such investigation was not intended to be carried on in observance of the technical rules adopted by courts of law. The act provides that the board shall be composed of seven physicians. These men are not learned in the science of law, and to require of a board thus composed that its investigations be conducted in conformity to the technical rules of a common law court would at once disqualify it from making any investigation. It is subversive of the morals of the people and degrading to the medical profession for the state to clothe a grossly immoral man with authority to enter the homes of her citizens in the capacity of a physician. It was the intention of the legislature to adopt a summary proceeding by which the morals of the people and the dignity of the profession might be protected against such a possibility without being embarrassed by the technical rules of proceedings at law."

The contention of appellee that the act in question was a proper exercise by the legislature of its police powers is assailed by counsel for appellant as inapplicable and unsound, "because there is no necessity for the exercise of the power in that form"; but the contention of counsel for appellee is fully sustained in *Meffert v. State Board, supra.* The section of the statute under which these proceedings were had defines "unprofessional and dishonorable conduct," and includes "the procuring or aiding or abetting in procuring a criminal abortion" in that definition. Counsel for appellant assails his defini-

tion as "a profound legal bizarrerie," and says that the author of that definition "should be immortalized as an apostle of the incongruous." We are unable to concur in this severe criticism of the author of the section of the statute under consideration, or of the definition referred to. If "the procuring or aiding or abetting in procuring a criminal abortion" is not "unprofessional or dishonorable conduct" in one holding a certificate entitling him to practice medicine, then we are unable to conceive of any conduct of which such person might be guilty which could be called unprofessional or dishonorable. As stated by the supreme court of Pennsylvania in *Mills v. Commonwealth,* 13 Pa. St. 631: "It is a flagrant crime at common law to attempt to procure the miscarriage or abortion of the woman, because it interferes with and violates the mysteries of nature in that process by which the human race is propagated and continued. It is a crime against nature which obstructs the fountain of life, and therefore it is punished."

Counsel for appellant contends that "it follows that a sufficient complaint of unprofessional or dishonorable conduct within the meaning of section 14 must, in apt terms, charge the criminal destruction by the accused, either as principal or accessory, of a *vitalized human fœtus";* that "there is here no charge, even by implication, of the destruction of a vitalized fœtus, which is the very essence of the crime of abortion." Authorities are not wanting to sustain this contention by counsel, but we fully concur in the following holding of the supreme court of Pennsylvania in *Mills v. Commonwealth, supra:* "The next error assigned is that it ought to have been charged in the count that the woman had become quick. But, although it has been so held in Massachusetts and some other states, it is not, I apprehend, the law in Pennsylvania, and never ought to have been the law anywhere. It is not the murder of a living child which constitutes the offense, but the destruction of gestation by wicked means and against nature. The moment the womb is

instinct with embryo life and gestation has begun the
crime may be perpetrated." If the theory contended for
by counsel for appellant should be sustained, it would
be practically impossible to convict an abortionist for
any abortion, or attempted abortion, during the first five
months of pregnancy; for, if gestation had not proceeded
to the period of quickening, there would be no way of
disputing the testimony of the abortionist that what he
removed from the woman was in fact a dead fœtus.
Even the woman herself could not dispute this testimony
prior to pulsation following the quickening period. It
would be giving unlimited license to the abortionist to
ply his nefarious calling, providing he confined his crim-
inal operations to the early months of gestation. We
prefer to be in line with the supreme court of Pennsyl-
vania, and say, although it has been so held in Massa-
chusetts and some other states, it is not the law in
Nebraska, and never ought to have been the law any-
where.

It is also contended by counsel that by this proceeding
they have been deprived of the right of a trial by jury.
This contention was considered in *In re Smith*, 10 Wend.
(N. Y.) 449, where it is said: "It is contended  *  *  *
that it conflicts with those provisions of the constitution
of the United States and of this state which secure to
the citizens the right of trial by jury, and prohibit the
establishment of any new court, except such as shall
proceed according to the course of the common law. * * *
The power conferred by this statute is similar in its
character and consequences to that which is possessed by
the courts of record of this state over counselors, solicitors
and attorneys. They may by statute (1 Rev. St. 108, secs.
23, 24) be removed or suspended by the several courts to
which they belong. The twenty-fourth section prescribes
the mode of proceeding in such cases. They are strictly
summary. A copy of the charges is to be delivered to
the party, and he is to have an opportunity of being heard.
But there is no grand jury to indict, or petit jury to

try, nor any of the usual concomitants of a trial by jury; and yet I believe no constitutional objections were ever raised to this jurisdiction." Continuing, the court say: "The practice of physic and surgery in this state was regulated by law as early as 1760 (2 Rev. Law, 219, note), and such regulations have been altered and extended from time to time down to the passing of the act in question. Under the law as it previously existed the county medical society were authorized to make such by-laws and regulations relative to the admission and expulsion of members as they thought fit and proper, not inconsistent with the constitution and laws of the state." So, also, section 5 of the act in question provides that our state board of health "may make and adopt all necessary rules, regulations and by-laws not inconsistent with the constitution and laws of this state or of the United States to enable it to perform its duties and transact its business under the provisions of this act." Comp St. 1903, ch. 55.

The further contention is made by counsel that proceedings against appellant should have been preceded by a conviction in a court of competent jurisdiction. This contention is decided adversely to them in *In re Smith, supra.* The court say: "The trial and acquittal of the defendant upon the indictment for producing the abortion was no bar to this proceeding. They are entirely distinct and independent proceedings, having different objects and results in view; the one having regard to the general welfare and criminal justice of the state, the other simply and exclusively to the respectability and character of the medical profession, and the consequences connected with or necessarily flowing from it. It is immaterial, therefore, in my judgment, whether the offense mentioned in the charge was indictable or not, and whether the indictment was disposed of upon its merits, or upon some matter of form." If, as stated by the New York court, a trial and acquittal of the defendant upon his indictment for producing an abortion would not be a bar to the proceeding, it follows, as a matter of course, that a trial and

conviction for producing an abortion is not a condition precedent to proceedings to revoke a license.

It is contended that no right of review of the evidence exists. A careful consideration of the question satisfies us that where the officer can only be removed, or the licensee have his license revoked, for cause first found and ascertained by the board or tribunal provided for that purpose, the right of review should be preserved. This was so held in the former opinion in this case. 75 Neb. 172. In such a case the findings of the board should be upheld, unless it clearly appears that there is no evidence to uphold them. We have carefully read the entire record, and if it were now before us as a bill of exceptions in an ordinary court trial, with a verdict of the jury against appellant, we would be compelled to hold that the evidence sustains the verdict.

A consideration of the whole case has convinced us that the state board of health proceeded in the present case fairly and openly and within the powers granted to it by the legislature; that appellant was given proper and sufficient notice of the hearing, and every opportunity upon the hearing to vindicate himself from the charges preferred against him; that the findings and judgment of the board were in accord with the law and fully sustained by the evidence; and that the district court did not err in affirming its proceedings.

We therefore recommend that the judgment of the district court be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

REESE, J., not sitting.