# Staunton

CHARLES S. GROSSO v. COMMONWEALTH OF VIRGINIA.

September 9, 1942.

Record No. 2589.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Wayt B. Timberlake, Jr.*, and *George G. Rinier* (Indianapolis, Ind.), for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Carrington Thompson, Special Assistant*, for the Commonwealth.

*Duval & Duval*, for the Medical Society of Virginia, *amicus curiae*.

HOLT, J., delivered the opinion of the court.

On February 12, 1940, Charles S. Grosso was convicted of practicing "chiropractic and medicine" in Staunton on December 11, 1939, "without having first obtained a license therefor as required by law." From that conviction he obtained a writ of error. It was heard by us, reversed and remanded. See *Grosso v. Commonwealth*, 177 Va. 830, 13 S. E. (2d) 285. He was again tried on the same warrant and was again convicted on November 18, 1941. His punishment was fixed by a jury at a fine of $100, and that was confirmed by the court. His case is now for the second time before us on a writ of error.

Grosso's Case, reversed as we have seen, was reversed for errors which did not go to its merits. At that time it was still contended that it is not necessary for physicians in Virginia to obtain a license to practice. Liability for such failure has now been established by *Miller v. Commonwealth, ante*, p. 36, this day decided. With that settled, and in the light of what has already been decided in *Grosso v. Commonwealth, supra*, little is left. In those cases all cognate statutes are cited and dealt with. To again review them would be unfruitful.

The first error assigned is that the warrant is insufficient. If it is insufficient, it is because the defendant was not told wherein he had offended. He encountered no such difficulty when his case was first heard, nor did he suggest it. On appeal there the court said:

"There being no assignment of error challenging the sufficiency of the evidence to sustain the verdict, such sufficiency is conceded. Neither is the sufficiency of the warrant questioned."

Nor does he now labor under any such handicap. Both physicians and chiropractors must obtain a license before they can lawfully pursue their vocations. Both are exponents of the healing art. Heretofore, dealing there with that subject, we said:

"It is true that the statute does not define the practice of chiropractic as distinguished from the practice of medicine, homeopathy or osteopathy. But section 1622, as amended, *supra,* provides that certain acts therein mentioned 'shall be regarded as practicing medicine within the meaning of this chapter,'—that is, chapter 68 of the Code which regulates the practice of medicine in all of its branches, including that of chiropractic. The latter part of section 1622 forbids the use of certan titles, words, letters or designations intending to designate the user as, or to imply that he is, 'a practitioner of medicine in any of its branches,' which is a further indication that the section is not intended to apply to the practice of medicine in a restricted sense as one of the branches of the healing art."

If the defendant was in doubt, which he was not, he could readily have had that cleared away. *Hurd* v. *Commonwealth*, 159 Va. 880, 165 S. E. 536.

These statutes sustain the contention of the Commonwealth:

By an act of the General Assembly approved March 28, 1928, section 1623 of the Code, as amended, in part reads:

"Any person practicing medicine, homeopathy, osteopathy, chiropractic or chiropody in this State in violation of the provisions of this chapter, shall, upon conviction," etc.

Code, section 1615, as amended by that act in part reads:

"All applications for certificates to practice medicine, homeopathy, osteopathy, and chiropractic in this State after the passing of this act must successfully pass an examination before the board of medical examiners, established by this act."

Next it is said that the evidence is not sufficient to sustain a conviction.

He rented rooms in an office building in Staunton—three of them—and fitted them with appropriate appliances. He had a secretary. He published testimonials to the effect that he could and did cure disorders which did not yield to conventional treatment. He listed himself as a chiropractor

in the local telephone book and by publications kept the public advised of his movements:

> "Due to change in plans, will be in my office at regular hours on Monday, Aug. 21. DR. CHARLES S. GROSSO, Chiropractor."

He held himself out as being competent to treat a wide variety of cases, extending from backache to heart disease, and to others of a more intimate character. Plainly the evidence supports the verdict.

It is said that evidence should not have been admitted tending to show the conduct of the accused immediately before December 11, 1939. He was charged with offending on that date, and of course that the Commonwealth must prove; and it did prove that he did so offend. If December 11, 1939, had been curtained off, the jury could not have told what it was all about.

When Grosso set himself up in business and held himself out as a chiropractor, without having obtained a license to follow that vocation, his offense was a continuing one.

It is contended that there is error in Commonwealth's instruction "A". This instruction is that given in Grosso's first case lettered "B" and is there copied with subsection (d) eliminated. It has already been approved and for reasons stated. We see no reason to depart from our conclusions as to it.

Finally it is said that the defendant and his school of medicine are discriminated against in that it is not recognized as a worth while school of the healing art. His approach is wrong. His real complaint is that no special provision has been made for him. He can qualify when he meets the requirements of the board of medical examiners.

Code, section 1615, as amended by an act of the General Assembly, Acts of Assembly, 1928, pp. 1349-1354, provides, in part, as follows:

> "(d) Has studied medecine not less than four school years, including four satisfactory courses of at least eight months each in four different calendar years in a medical school registered as maintaining a standard, satisfactory to the

State board of education. Such standard being based upon the grading of the American Medical Association, of the American Institute of Homeopathy, and of the American Osteopathic Association, respectively."

"Virginia medical schools and Virginia medical students shall not be discriminated against by the registration of any medical school out of the State whose minimum graduation standard is less than that fixed by statute of Virginia medical schools."

The defendant appears to be a "graduate of Palmer School (a full three-year course)," at which school was taught "a course of anatomy, histology, physiology, embryology, and chemistry."

He did not apply to the board of medical examiners for a certificate and with no other training than this could not have applied successfully.

It is everywhere conceded that the preservation of its people's health falls within the police power of the State. *Dent* v. *West Virginia*, 129 U. S. 114, 9 S. Ct. 231, 32 L. Ed. 623. Statutes so designed must be arbitrary indeed to be unconstitutional. Those intended to raise the standards of men who profess to be adept in the healing art are everywhere favorably construed. New schools must prove their worth to the satisfaction of the Legislature before they are recognized. They come and go, and "continue not in one stay." It is within wide limits for the Legislature to say when their worth has been sufficiently established and what are the tests they must undergo.

Certainly the science of medicine is not static; but society must protect itself against those who are unable or unwilling to undergo that training and to measure up to those requirements now fairly universally recognized.

The judgment of the trial court is plainly right and must be affirmed.

*Affirmed.*