HAZEL SCOTT, APPELLEE, V. STATE OF NEBRASKA EX REL. BOARD OF NURSING OF THE STATE OF NEBRASKA, APPELLANT.
244 N. W. 2d 683

Filed August 4, 1976. No. 40546.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellant.

Mark D. McGuire of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is an appeal by the Board of Nursing of the State of Nebraska from a judgment of the District Court for Lancaster County reversing the board's denial of a professional nursing license to the appellee, Hazel Scott.

The issues which we find it necessary to decide on this appeal are: (1) What is the appropriate scope and standard of review to be applied by the District Court to appeals from the Board of Nursing? (2) Did the trial court err in finding that the order of the board denying the license was not sustained by the evidence?

We reverse and remand with directions.

Appellee had filed with the board, on an application form provided by it and verified under oath, a request

for a Nebraska professional nursing license. After investigation the board notified the appellee that on January 9, 1975, her application had been denied and informed her that she was entitled to a hearing if she desired. She requested a hearing which was held in April of 1975. She was represented by counsel and both the board and the appellee presented evidence. Following the hearing the board again denied the application and an appeal to District Court followed. That court tried the case de novo under the provisions of section 71-1,132.34, R. R. S. 1943, and directed that a license be issued to the appellee.

A preliminary reference to some of the background facts and pertinent statutory provisions will aid clarity. Appellee held a license as a registered nurse issued by the State of New York. The record shows that she meets the technical qualifications required for a nurse' license in Nebraska as provided by section 71-1,132.13, R. S. Supp., 1974, to wit: ". . . (1) Is of good moral character; (2) has completed four years of high school study or its equivalent as determined by the board; and (3) has completed the basic professional curriculum in an accredited school of professional nursing approved by the board and holds a diploma therefrom." Section 71-1,132.15, R. R. S. 1943, provides that when a person has been duly licensed as a registered nurse under the law of another state, the board may issue a Nebraska license if the applicant meets the requirements of section 71-1,132.13, R. S. Supp., 1974, which we have earlier quoted. Section 71-1,132.29, R. R. S. 1943, provides in part: "The board shall have power to deny . . . any license . . . applied for . . . upon proof that the person . . . (6) is guilty of unprofessional conduct . . .."

Appellee takes the position in this court and apparently did in the proceedings below that so long as she met the requirements of section 71-1,132.13, R. S. Supp., 1974, the board could not, under the provisions of section 71-1,132.15, R. R. S. 1943, deny her a license. Such an

interpretation would, of course, preclude the board from considering appellee's unprofessional conduct under section 71-1,132.29, R. R. S. 1943, before issuing a license. Appellee's position is not supported by the language of section 71-1,132.29, R. R. S. 1943, which specifically provides that the board shall have the "power to deny . . . any license to practice nursing . . . applied for in accordance with the provisions of sections 71-1,132.04 to 71-1,132.36 . . ." if found guilty of unprofessional conduct. Clearly, the Legislature intended that section 71-1,132.29, R. R. S. 1943, should apply to a section 71-1,132.15, R. R. S. 1943, application for a license. The issue of appellee's unprofessional conduct was properly before the board.

When the appellee filed her application the board issued to her a temporary license under the provisions of section 71-1,132.16, R. R. S. 1943. While holding such temporary license she worked at two institutions in the city of Lincoln. Previously she had worked as a nurse for a short time in a federal hospital in Pine Ridge, South Dakota, and also briefly at several institutions in Buffalo, New York.

Following the request of the appellee for a hearing, she was given written notice of the time and place of the hearing and was advised that during the hearing the board would review "reported statements relative to your previous practice of nursing." She was informed that the statements covered her unsafe nursing practices, her unsatisfactory work attendance, and her failure to utilize satisfactory judgment in administering nursing practices.

After the hearing the board entered an order in writing which found: "14. That applicant had not rechecked the temperature of a seven-month-old child who was admitted who reportedly had a temperature of 105° prior to admission, nor did she notify the physician.

"15. That, without notifying a supervisor, applicant deserted patients by leaving an assigned area after com-

ing on duty and accepting responsibility for patients.

"16. That applicant refused to give a revised procedure instituted to improve patient safety.

"17. That applicant refused to follow-through on procedures for admitting a patient.

"18. That applicant refused to attend inservice education programs.

"19. That applicant refused to follow employment policies, such as wearing designated uniform, appearing for duty at the designated time, notifying employer ahead of time if unable to report for duty, and by refusing to accept and follow orders.

"20. That applicant failed to cooperate with patients, and in patient's presence conversed in such an insensitive manner that the patient's anxiety level was increased.

"21. That applicant was unwilling to accept supervision and guidance and to cooperate with other nursing personnel." The board further concluded as a matter of law: "2. That the applicant is guilty of unprofessional conduct as evidenced by unsafe and unsatisfactory nursing practices."

On appeal the District Court reversed the board's denial of the license, finding: "That the evidence may show that plaintiff is an employee who cannot follow orders and cannot get along with her fellow employees, but it fails to show that the conduct of the plaintiff constituted unprofessional conduct as it is generally defined," and cited text authority in part as follows: " 'Thus a statute authorizing revocation for . . . "unprofessional" acts or conduct contemplates conduct which shows that the person guilty of it either is intellectually or morally incompetent to practice the profession or has committed an act or acts of a nature likely to jeopardize the interest of the public; it does not authorize revocation for trivial reasons or for a mere breach of the generally accepted ethics of the profession.' "

An examination of the record indicates that the evi-

dence presented before the board and, with the exceptions hereinafter noted, to the District Court on appeal is clearly sufficient to support factual findings Nos. 14 through 21, of the board's order. The evidence supporting those findings was not contradicted by the appellee in her own testimony, and she offered no other contradicting evidence. The board was presented opinion testimony of several nurses of long experience and appropriate educational qualifications that the acts charged, including those of which the board found the appellee guilty, did constitute unprofessional conduct.

The evidence introduced to the board included affidavits of the personnel officer and a nurse consultant of the South Dakota institution in which the appellee had worked. Both affidavits were founded upon written and oral information and complaints relayed to the affiants by those charged with supervisory responsibility for the nursing activities of the appellee at that institution. These affidavits offer the foundation for findings Nos. 14 and 18 of the board. The affidavits of the nurse consultant further indicated that the appellee's employment was terminated during the probationary period "due to poor work performance, work attitude, and conduct on the job which did not meet the standards of a professional nurse."

In the District Court the board offered the record of the evidence presented to it, viz., the exhibits including the affidavits above described and the testimony of the witnesses. The court sustained objections to these offers. The same witnesses heard by the board, however, did testify in person at the trial in the District Court and substantially reiterated the testimony given before the board. This testimony affords the support for the other specific findings of the board. Information in the excluded affidavits also supports some of those findings.

The statutes of Nebraska which regulate the issuance of professional nurses' licenses do not define unprofes-

sional conduct. The Board of Nursing has adopted general standards as to what is included in the term unprofessional conduct. The exhibit containing these standards bears the notation: "Accepted by the Nebraska State Board of Nursing Reviewed January, 1975." The evidence shows that these standards were not adopted until January 8, 1975, the day previous to the time the appellee's temporary license expired. Also introduced before the trial court for the seeming purpose of establishing criteria of unprofessional conduct were standards of nursing practice of the American Nurses' Association and a booklet containing the American Nurses' Association code with interpretations.

The trial court viewed the matter de novo and apparently concluded that as a matter of law the acts and omissions on which the board founded its denial did not constitute unprofessional conduct and substituted its own judgment for that of the board. The question is, May it properly do so? As we have already noted, section 71-1,132.34, R. R. S. 1943, provides for trial de novo in the District Court. The specific provision of the statute is: "The trial in the district court upon such appeal shall be de novo and shall be upon the issues joined before the board, except as the judge of the district court may allow amendments thereto, which shall be governed by the usual rules of pleading in that court." Section 71-1,132.32, R. R. S. 1943, provides in part: "The board shall not be bound by strict rules of procedure or by the laws of evidence in the conduct of its proceedings, but the determination shall be based *upon sufficient legal evidence to sustain it*." (Emphasis supplied.)

We first consider the scope of judicial review in this type of proceeding. Our determination in this regard rests on constitutional principles arising from the doctrine of separation of powers. The licensing and regulation of the health profession and other matters dealing with health is a legislative function which that branch of government ordinarily carries out through

administrative agencies created by it. Kansas State Board of Healing Arts v. Foote, 200 Kan. 447, 436 P. 2d 828; Lilly v. Commissioner, 343 U. S. 90, 72 S. Ct. 497, 96 L. Ed. 769, 27 A. L. R. 2d 492; Hunstiger v. Kilian, 130 Minn. 474, 153 N. W. 869; Grosso v. Commonwealth of Virginia, 180 Va. 70, 21 S. E. 2d 728; Louisiana State Board of Medical Examiners v. Arton (La. App.), 130 S. 2d 666; Munk v. Frink, 81 Neb. 631, 116 N. W. 525.

Article II, section 1, of the Constitution of Nebraska, provides: "The powers of the government of this state are divided into three distinct departments, the Legislative, Executive and Judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." A statute which purports to give a court the power to review an exercise of legislative power de novo in the sense that the court may substitute its own judgment for that of the administrative agency to which the Legislature has appropriately delegated the power is unconstitutional. Kansas State Board of Healing Arts v. Foote, supra; Keller v. Potomac Electric Power Co., 261 U. S. 428, 43 S. Ct. 445, 67 L. Ed. 731; Muskrat v. United States, 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246; Moran v. State Board of Medical Examiners, 32 Cal. 2d 301, 196 P. 2d 20 (dissent by Traynor, J.); Marburg v. Cole, 286 N. Y. 202, 36 N. E. 2d 113; 16 C. J. S., Constitutional Law, §§ 104, 105, pp. 483, 486 et seq.

However, in construing a statute, it is the duty of the court to give a statute an interpretation which meets constitutional requirements if it can reasonably be done. Stahmer v. State, 192 Neb. 63, 218 N. W. 2d 893. We have had occasion to point out that de novo review as used in Nebraska statutes does not always import the same meaning. The 20's, Inc. v. Nebraska Liquor Control Commission, 190 Neb. 761, 212 N. W. 2d 344. In the case before us we note that portion of section 71-1,132.32, R. R. S. 1943, which provides that the board's

determination "shall be based upon sufficient legal evidence to sustain it." This provision must be considered by us in determining what the Legislature intended by de novo review in this instance. It is anomalous that the Legislature would, in section 71-1,132.32, R. R. S. 1943, establish a standard that "the board's determination shall be based upon sufficient legal evidence to sustain it," and then adopt for court review a de novo standard permitting the court to substitute its own judgment for that of the administrative agency. This is particularly true where the board itself must by statute consist of professional nurses, § 71-1,132.08, R. R. S. 1943, who have professional expert knowledge in the area being regulated. We further note in this connection that the statutes provide that the trial in the District Court is required to be upon the issues joined before the board unless amendment is allowed by the District Judge. § 71-1,132.34, R. R. S. 1943. Taking into consideration the above provisions in accordance with our duty to construe the statute to give it a constitutional interpretation if that can be reasonably done, we conclude that the Legislature did not intend to use the term de novo in the sense that the reviewing court could substitute its own judgment for the expert judgment of the board.

The appropriate constitutional standard of review is restricted to considering whether the order of the board is supported by substantial evidence justifying the order made whether it acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable. Kansas State Board of Healing Arts v. Foote, *supra*; The 20's, Inc. v. Nebraska Liquor Control Commission, *supra*. See, also, Coil v. Department of Health, 189 Neb. 606, 204 N. W. 2d 167; Bartlett v. State Real Estate Commission, 188 Neb. 828, 199 N. W. 2d 709; Munk v. Frink, *supra*.

In connection with the board's acceptance of the affidavits which were excluded in the District Court, we

point out that by legislative act the board is not bound by the laws of evidence, § 71-1,132.32, R. R. S. 1943, unless a party so requests. § 84-914(1), R. R. S. 1943. Appellee made no such request. This rule is continued in the new code of evidence effective January 1, 1976. § 27-1101(4)(c), R. R. S. 1943. The evidence before the board supported its factual findings. Its findings were not unreasonable or arbitrary. It acted within the scope of its statutory authority.

One position of the appellee merits further comment. She takes the position that "With the well-defined standard of 'unprofessional conduct' before the District Court, the appellant was obligated to present evidence showing 'grossly immoral, dishonorable or disreputable acts'. The appellant failing to do so cannot and must not prevail." This position overlooks the fact that even the definition relied upon by the District Court includes " 'act or acts of a nature likely to jeopardize the interest of the public.' " It seems clear enough that the board concluded that the interests of the public were jeopardized for it found as a matter of law the applicant guilty of "unprofessional conduct, *as evidenced by unsafe and unsatisfactory nursing practices.*" (Emphasis supplied.) Those words certainly constitute an implicit finding that the appellee's acts did "jeopardize the interest of the public."

It may be argued that the finding of the board cannot be justified because the acts of which the board found the appellee guilty are no where specifically defined as unprofessional conduct. The Kansas Supreme Court answered a similar contention in Kansas State Board of Healing Arts v. Foote, *supra,* saying: "Considering the entire policy expressed in the act, we believe the legislature, by enumerating certain acts and classifying them as unprofessional conduct, did not thereby intend to exclude all other acts or conduct in the practice of the healing arts which by common understanding render the holder of a license unfit to practice. It would in-

deed be difficult, not to say impractical, in carrying out the purpose of the act, for the legislature to list each and every specific act or course of conduct which might constitute such unprofessional conduct of a disqualifying nature. Nor does any such failure leave the statute subject to attack on grounds of vagueness or indefiniteness. Our statute makes no attempt to delineate what acts are included in the terms immoral or dishonorable conduct, which are also made grounds for revocation. The determination whether by common judgment certain conduct is disqualifying is left to the sound discretion of the board.

"Other courts have construed the term professional conduct as used in licensure acts. In Reyburn v. Minnesota State Board of Optometry, 247 Minn. 520, 78 N. W. 2d 351, the court stated:

" ' "Unprofessional conduct" is conduct which violates those standards of professional behavior which through professional experience have become established, by the consensus of the expert opinion of the members, as reasonably necessary for the protection of the public interest.' "

It thus appears that whether certain acts constitute unprofessional conduct may be established by the testimony of qualified experts. That was done in this case.

One additional matter must be decided. In the District Court the board moved to dismiss the appellee's appeal on the ground that the District Court never acquired jurisdiction because the appellee did not perfect her appeal in the manner specified by section 84-917(2), R. R. S. 1943. We must confront this contention because if the District Court did not acquire jurisdiction then neither did this court. The section just referred to provides in part: "Proceedings for review shall be instituted by filing a petition in the district court of the county where the action is taken within thirty days after the service of the final decision by the agency. All parties of record shall be made parties to the pro-

ceedings for review. Summons shall be served as in other actions except that a copy of the petition shall be served upon any such agency together with the summons." A petition was filed but no summons was served.

The answer to the board's position is that section 71-1,132.34, R. R. S. 1943, provides a specific method of appeal from decisions of the Board of Nursing. It provides that an appeal may be taken within 30 days. It requires "The filing of a notice in writing of the intention of taking such appeal with the director within ten days after the entry of the order" and that this "shall be sufficient notice to the adverse party of the intention of taking such appeal." It requires that "A transcript of all pleadings upon which the cause was tried before the board, duly certified, shall be filed in the office of the clerk of the district court, and such filing shall complete the appeal." The record establishes that the appellee filed her notice of appeal within the time and in the manner called for by section 71-1,132.34, R. R. S. 1943. The record further shows that a petition for a review and a copy of the proceedings before the board were filed within the 30 days from the date of the order of the board. The board's claim that the District Court did not acquire jurisdiction is without merit. We need not decide in this case whether the appeal procedure provided for in section 71-1,132.34, R. R. S. 1943, is the exclusive method of appeal from orders of the Board of Nursing, or whether section 84-917(2), R. R. S. 1943, affords an alternative method of appeal.

REVERSED AND REMANDED.