ANNE LEIB *v.* BOARD OF EXAMINERS FOR NURSING OF THE STATE OF CONNECTICUT

LOISELLE, BOGDANSKI, LONGO, PETERS and A. HEALEY, Js.

Argued November 7, 1978—decision released March 20, 1979

*Elizabeth Spahn,* with whom, on the brief, was *Janet L. Weinberg,* for the appellant (plaintiff).

*Christina G. Dunnell,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellee (defendant).

ARTHUR H. HEALEY, J. On September 20, 1976, the defendant state board of examiners for nursing, hereinafter the board, revoked the registered nursing license of the plaintiff Anne Leib, hereinafter Leib, after a hearing on charges brought by the board against her. Leib then appealed the action of the board to the Court of Common Pleas, which dismissed her appeal. The appeal to this court followed.

Leib was a licensed registered nurse authorized to practice in Connecticut. In June, 1976, she was employed at Hartford Hospital. On or about June 9, 1976, she charted Demerol as given to a patient, but converted it to her own use. On June 11, 1976, agents of the drug control division of the department of consumer protection interviewed Leib concerning this matter. During the interview she gave a voluntary written statement in which she admitted the conversion of the Demerol earlier that week.[1] In this statement she also admitted having taken

[1] In connection with giving this statement Leib signed a waiver of her constitutional rights.

Demerol on several occasions in the past at other institutions where she had been employed. The first time was in about 1957. She maintained that she did so when beset by severe physical problems which she set out in her statement.

On July 17, 1976, Leib was served by a deputy sheriff with a summons to appear before the board on August 4, 1976, to answer charges brought against her under the provisions of General Statutes § 20-99.[2] The notice alleged that "Anne Leib is

[2] General Statutes § 20-99 provides: "IMPROPER PROFESSIONAL CONDUCT. HEARING. APPEAL. PROHIBITED CONDUCT. (a) The board of examiners for nursing shall have jurisdiction to hear all charges of conduct which fails to conform to the accepted standards of the nursing profession brought against persons licensed to practice nursing. After holding a hearing in accordance with chapter 54, said board, if it finds such person to be guilty, may revoke or suspend his or her license or censure or otherwise discipline such licensee. Witnesses and records may be summoned before such hearings by the issuance of subpoenas under the board's seal, signed by the chief nursing examiner. The president or presiding member may administer oaths. When any license is revoked or suspended, notification of such action shall be sent to the state department of health. Any person aggrieved by the finding of the board may appeal as provided in chapter 54. Such appeal shall have precedence over nonprivileged cases in respect to order of trial. (b) Conduct which fails to conform to the accepted standards of the nursing profession includes, but is not limited to, the following: (1) Fraud or deceit in procuring or attempting to procure a certificate or license to practice nursing; (2) incompetence or habitual negligence in carrying out usual nursing functions; (3) physical illness or loss of motor skill, including but not limited to deterioration through the aging process; (4) emotional disorder or mental illness; (5) abuse or excessive use of drugs, including alcohol, narcotics or chemicals; (6) conviction by any court of competent jurisdiction of a crime involving moral turpitude; (7) wilful falsification of entries in any hospital, patient or other record pertaining to drugs, the results of which are detrimental to the health of a patient and (8) conviction of the violation of any of the provisions of this chapter by any court of criminal jurisdiction, provided no license or registration shall be revoked or suspended because of such conviction if any appeal to a higher court has been filed until the appeal has been determined by the higher court and the conviction sustained."

guilty of improper professional conduct which failed to conform to the accepted standards of the nursing profession within the meaning of Section 20-99 in that she allegedly obtained and converted to her own use Demerol, a controlled drug. These incidents are alleged to have occurred on or about June 9, 1976, while employed at Hartford Hospital, Hartford, Connecticut." That notice of charges also stated that at the hearing "you may be represented by an attorney and present evidence on your behalf in accordance with Section 4-178 of the Connecticut General Statutes."

At the hearing on August 4, 1976, Leib was not represented by counsel and she testified in her own behalf. She was the only witness who testified at the hearing at which the board received into evidence the written statement given by her to the consumer protection agents on June 11, 1976, as well as an affidavit from Michael A. Peszke, a psychiatrist, which was offered by Leib. On September 20, 1976, the board issued its findings of fact and its order revoking Leib's license to practice nursing. She appealed this order to the Court of Common Pleas. That court dismissed that appeal and her appeal to this court followed.

Error is claimed in the trial court's failure to conclude that the plaintiff's procedural due process rights under the federal and state constitutions as well as her rights guaranteed by General Statutes § 4-177 (g) of the Uniform Administrative Procedure Act (UAPA) (General Statutes §§ 4-166 et seq.) were violated by the board "when it considered and based its findings of fact and decision on evidence of matters beyond the scope of the notice given to the plaintiff." "The due process

clauses of the federal and state constitutions have the same meaning and impose similar limitations. *Katz* v. *Brandon,* 156 Conn. 521, 537, 245 A.2d 579; *State* v. *Doe,* 149 Conn. 216, 226, 178 A.2d 271." *State* v. *Kyles,* 169 Conn. 438, 442, 363 A.2d 97 (1975). "[W]here a party appeals pursuant to the jurisdictional grant of the UAPA [as is the case here] the agency action is measured by the standards contained within the UAPA." *McDermott* v. *Commissioner of Children & Youth Services,* 168 Conn. 435, 441, 363 A.2d 103 (1975); see *Adamchek* v. *Board of Education,* 174 Conn. 366, 369, 387 A.2d 556 (1978). Section 4-177 of the UAPA which is entitled "Contested Cases. Notice. Record" provides in part the following: "(a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice. (b) The notice shall include: (1) A statement of the time, place, and nature of the hearing; . . . (3) a reference to the particular sections of the statutes and regulations involved; (4) a short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished." We are aware that "[t]he right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan* v. *United States,* 304 U.S. 1, 18, 58 S. Ct. 773, 82 L. Ed. 1129 (1937). This court, in discussing the sufficiency of notice in administrative proceedings, has said that the notice of charges against a party whose rights are to be adjudicated by an agency "should state them with sufficient par-

ticularity so that he may be fairly apprised of the nature of the offense with which he is charged." *Jaffe* v. *State Department of Health,* 135 Conn. 339, 352, 64 A.2d 330 (1949); see *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 374, 355 A.2d 265 (1974). "The concept of due process, when the government seeks to deprive a person of life, liberty or property, is that the thoroughness of the procedure by which the deprivation is effected must be balanced against the gravity of the potential loss and the interests at stake, and due process requires that the procedure involved must be appropriate to the nature of the case. See *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865; *Anderson National Bank* v. *Luckett,* 321 U.S. 233, 246, 64 S. Ct. 599, 88 L. Ed. 692. Consequently, it has been held that an appropriate hearing is necessary before a governmental agency may, on the basis of an alleged state of facts, impair the means of a person's livelihood, whether the means be wages or welfare benefits, price rates or a right pursued under a license. *Bell* v. *Burson,* 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90; *Goldberg* v. *Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287; *Sniadach* v. *Family Finance Corporation,* 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349; *Morgan* v. *United States* [304 U.S. 1, 18, 58 S. Ct. 773, 82 L. Ed. 1129]." *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 45, 327 A.2d 588 (1973). "The procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause. *Taylor* v. *Robinson,* 171 Conn. 691, 698, 372 A.2d 102." *Adamchek* v. *Board of Education,* supra, 369.

The plaintiff Leib claims that despite the fact that the notice was limited to events "on or about June 9,

1976, while employed at Hartford Hospital," the board considered evidence and based its decision to revoke her license on matters twenty years old. There she points to one of the board's findings of fact which recites: "The respondent [Leib] stated that she had been taking Demerol sporadically since 1958." She argues that she was not prepared to answer "these new charges, relating to an incident which allegedly occurred more than twenty years ago," and without notice of them, she was unable to defend herself.

This claim has no merit. Actually, Leib freely admitted the charges made in the notice of the incidents alleged to have occurred on or about June 6, 1976, both in the voluntary written statement given the consumer protection agents and in her testimony at the hearing. The board's findings of fact in that regard are not and could not be attacked. The charges of which she was found guilty were of "matters officially noticed" as described in § 4-177 (g). Cf. *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 376, 355 A.2d 265 (1974). What was said in *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 568, 345 A.2d 520 (1973), is particularly applicable here. "The record does not indicate that the commissioner considered as evidence of guilt the plaintiff's prior violations. To claim, as the plaintiff does and as found by the trial court, that the admission before the hearing officer of these prior violations permeated the entire hearing and of necessity became involved in the final decision of the commissioner is to attribute to him a failure properly to perform his duty. Public officials are presumed to have done their duty until the contrary appears. *Aczas* v. *Stuart Heights, Inc.,* 154 Conn. 54, 59, 221 A.2d 589; *Comley ex rel. Brown* v.

*Lawlor,* 119 Conn. 155, 161, 174 A. 415; *Schuster* v. *Johnson,* 107 Conn. 133, 135, 139 A. 502." *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* supra. Leib having admitted the charge concerning the "incidents alleged to have occurred on or about June 9, 1976," both in writing and orally before the board, the question of the sanction, if any, to be imposed by the board, alone remained. Accordingly, the evidence relative to her prior experiences with Demerol in her nursing work was quite relevant on the question of sanction. Under General Statutes § 20-99, which is referred to in the notice of charges to her, she must have been aware that the board had several options on sanction upon a finding of guilt after a hearing, as it provided in part that the board "may revoke or suspend his or her license or censure or otherwise discipline such licensee." Her guilt was not found on a theory different from that alleged in the notice. See *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* supra, 44. The notice, hearing and findings on which the board's decision was based were not violative of statutory and due process standards as claimed.

Before leaving this phase, one further observation should be made. Leib argues that the trial court erred in that its memorandum of decision never considered the central question of the appeal, "whether considering evidence beyond the scope of notice is permissible," and that the court then compounded its error "by reading into the record charges not even remotely considered by the board, charges on which no evidence whatsoever had ever been presented and on which no finding had been issued by the board." The record does not sustain this claim. The record before us does not disclose that any claim of law was made in the trial court concerning

the consideration of evidence beyond the scope of the notice. Practice Book, 1963, § 223. We have determined that the trial court reached a correct decision and that ample support exists in the record to support its decision.

Leib also claims error in the trial court's concluding that the board's decision was not "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record in violation of C.G.S. § 4-181 (g) (5) [sic] when the board based its decision on uncorroborated evidence that was over twenty years old which did not directly pertain to the charge." General Statutes § 4-183 (g) (5) provides in pertinent part: "The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In this opinion we have already said that the board did not base its finding of guilt on any such evidence. We repeat briefly that Leib admitted the charge noticed orally and in writing and that she herself gave the evidence orally and in writing concerning the incidents that did go back almost twenty years. The credibility of witnesses and the determination of factual issues were matters within the province of the board. *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles,* 167 Conn. 304, 306, 355 A.2d 247 (1974); *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 49, 327 A.2d 588 (1973). We must overrule this claim of error.

We go on to the error claimed in the trial court's concluding that the phrase "abuse or excessive use

of drugs" in General Statutes § 20-99 (b) (5) was not unduly vague in violation of her rights "to a sufficiently definite warning of proscribed conduct and to a definite standard for even-handed adjudication and enforcement guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution and Article I of the Constitution of the State of Connecticut." General Statutes § 20-99 (a) gives the board jurisdiction "to hear all charges of conduct which fails to conform to the accepted standards of the nursing profession brought against persons licensed to practice nursing." Subsection (b) of § 20-99 states, in part: "Conduct which fails to conform to the accepted standards of the nursing profession includes, but is not limited to, the following: . . . (5) abuse or excessive use of drugs, including alcohol, narcotics or chemicals." This is not a proper assignment of error, it has no bearing on matters properly before us and need not be discussed. See *Thomas* v. *Thomas,* 159 Conn. 477, 487, 271 A.2d 62 (1970). This is so because Leib was not charged with a violation of § 20-99 (b) (5), but rather with being "guilty of improper professional conduct which failed to conform to the accepted standards of the nursing profession within the meaning of Section 20-99 in that she allegedly obtained and converted to her own use Demerol, a controlled drug," which incidents were further alleged to have occurred "on or about June 6, 1976, while employed at Hartford Hospital."

It is also claimed that the trial court erred in concluding that the evidence presented to the board supported its finding of "unprofessional conduct" under General Statutes § 20-99. The board's conclusion was that Leib "has violated Chapter 378,

Section 20-99, General Statutes of Connecticut as amended, in that she is guilty of unprofessional conduct which failed to conform to the standards of the nursing profession." It is clear on the face of the statute that the eight subsections of § 20-99 (b) which particularize "[c]onduct which fails to conform to the accepted standards of the nursing profession" include those eight subsections *"but is not limited"* to them. (Emphasis added.) The plain wording of the statute discloses the legislative intent. "When language is clear and unambiguous, its meaning is not subject to modification by construction." *Thibeault* v. *White,* 168 Conn. 112, 115, 358 A.2d 358 (1975); see *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967).

Section 20-99 (b) sets out specific acts or omissions that constitute "[c]onduct which fails to conform to the accepted standards of the nursing profession." It declares that those specific acts or omissions shall constitute such conduct but that such conduct is not limited to the acts or omissions specified. In the context of this appeal we believe that "unprofessional conduct" is "conduct which violates those standards of professional behavior which through professional experience have become established, by the consensus of the expert opinion of the members, as reasonably necessary for the protection of the public interest." *Reyburn* v. *Minnesota State Board of Optometry,* 247 Minn. 520, 523–24, 78 N.W.2d 351 (1956); see *Kansas State Board of Nursing* v. *Burkman,* 216 Kan. 187, 193, 531 P.2d 122 (1975). This comports with the view that what constitutes "unprofessional conduct" must be determined "by those standards which are commonly accepted by those practicing the same profession in

the same territory." *Cherry* v. *Board of Regents,* 289 N.Y. 148, 158, 44 N.E.2d 405 (1942) (involving the suspension of a dentist's license). *Cherry* also stated that "the standards of conduct generally accepted by [dental] practitioners in the State of New York are not so indefinite that they cannot be determined by qualified persons. They are part of the ethics of the profession and 'what is generally called the "ethics" of the profession is but the consensus of expert opinion as to the necessity of such standards.' *Semler* v. *Oregon State Board of Dental Examiners,* 294 U.S. 608, 612, 55 S. Ct. 570, 79 L. Ed. 1086. Every member of the profession should be regarded as an expert for such purpose." *Cherry* v. *Board of Regents,* supra, 158. In *Reyburn* the court also said that "[i]n establishing the necessity for and the existence of such standards [of professional behavior], every member of the profession should be regarded as an expert." *Reyburn* v. *Minnesota State Board of Optometry,* supra, 524. We note that the Connecticut state board of examiners for nursing consists of seven members, five of whom shall be registered nurses with at least five years experience in professional nursing and two of whom shall be licensed practical nurses with at least five years experience in licensed practical nursing who possess as well certain other qualifications for appointment or reappointment to the board. General Statutes § 20-88. It is to be presumed that the members of the defendant board, as composed under the statute, are qualified to pass upon questions of professional conduct and competence. *Gibson* v. *Connecticut Medical Examining Board,* 141 Conn. 218, 223, 104 A.2d 890 (1954); *Jaffe* v. *State Department of Health,* 135 Conn. 339, 349, 64 A.2d 330 (1949). In not limiting proscribed conduct to those

instances specifically spelled out in § 20-99, the statutory language "but is not limited to" which is coupled with the enumeration of specific or illustrative acts of unprofessional conduct is indicative of a legislative intent not to occupy the entire field by express definition but to delegate to the board the duty of ascertaining what other or additional acts violate the profession's acceptable standards. "It cannot be expected of a legislature that it should forbid specifically all improper practices likely to occur. *Bennett* v. *Indiana State Board of Reg. & Ex. in Optometry,* 211 Ind. 678, 687, 7 N.E. (2d) 977, 981." *Reyburn* v. *Minnesota State Board of Optometry,* supra, 526. One court has said that "[n]o matter how specific the standard or standards are stated, there is almost always a penumbra which requires the administrative agency to exercise a judgment as to whether the facts before it fall within or outside the legislative design." *Board of Medical Examiners* v. *Mintz,* 233 Or. 441, 447, 378 P.2d 945 (1963). In this connection the New York Court of Appeals has said that "[i]t has never been necessary for the Legislature or the Board of Regents to define with particularity acts which would constitute unprofessional conduct, whether in the fields of dentistry or pharmacy." *Bell* v. *Board of Regents,* 295 N.Y. 101, 108, 65 N.E.2d 184 (1946). The legislature has vested in the defendant board, an administrative agency, the power to determine the fitness and competency of those who desire to practice nursing. See *Bell* v. *Board of Regents,* supra. This is in keeping with the postulate that "[t]he licensing and regulation of the health profession and other matters dealing with health is a legislative function which that branch of government ordinarily carries out through administrative agen-

cies created by it." *Scott* v. *State ex rel. Board of Nursing,* 196 Neb. 681, 687–88, 244 N.W.2d 683 (1976), and cases therein cited.

Against this setting we have examined the evidence before the defendant board to determine whether the board properly concluded that "unprofessional conduct" has been established. Leib claims here that there was no evidence which indicated that she was addicted to any habit-forming drug. The board did not so charge her nor did it find her guilty of such a charge, and there is no evidence that she was in fact addicted to any habit-forming drug. She also claims that there was no evidence presented to the board that she "jeopardized the interests of the public." The case of *Gibson* v. *Connecticut Medical Examining Board,* 141 Conn. 218, 223, 104 A.2d 890 (1954), which she cites, speaks of "an act or acts of a nature *likely* to jeopardize the interest of the public." (Emphasis added.) We again point out that Leib herself in writing and in her testimony before the board admitted the incidents which were alleged to have occurred on or about June 9, 1976. Her written statement, which came into evidence at the board hearing, admitted that she herself used Demerol charted as given to a patient. The clear signal of such conduct as applied to the practice of nursing evinces a deliberate purpose not to discharge some duty necessary to the proper care or treatment or both of a patient, presumably as prescribed by a physician. The evidence amply supports a finding of "unprofessional conduct" by the board. Assuming, as we can, that a medical judgment had been made that the patient (or patients) involved was to be given Demerol, on this record, we conclude that choosing not to discharge that duty was unprofessional conduct by

Leib and as such was likely to jeopardize the interest of the public whom the nursing profession serves. In this professional setting the board could properly find established on the evidence that it was "[c]onduct which fails to conform to the accepted standards of the nursing profession." See General Statutes § 20-99. "In appeals of this nature the court cannot substitute its discretion for that legally vested in the commission, but determines on the record whether there is a logical and rational basis for the decision of the commission or whether, in the light of the evidence, it has acted illegally or in abuse of its discretion. General Statutes § 4-183 (g); *Connecticut Television, Inc.* v. *Public Utilities Commission,* 159 Conn. 317, 328, 269 A.2d 276; *Kram* v. *Public Utilities Commission,* 126 Conn. 543, 550, 12 A.2d 775." *Board of Aldermen* v. *Bridgeport Community Antennae Television Co.,* 168 Conn. 294, 297, 362 A.2d 529 (1975).

Leib also claims error in the denial of her motions to present additional evidence and for disclosure and production. General Statutes § 4-183 (f) provides: "The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs." "An appeal from an administrative tribunal should ordinarily be determined upon the record of that tribunal, and only when that record fails to present the hearing in a manner sufficient for the determination of the merits of the appeal, or when some extraordinary reason requires it, should the court hear evidence." *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 69, 157 A.2d 103 (1959). The question

whether additional testimony should be taken calls for an exercise of the court's legal discretion. *Tarasovic* v. *Zoning Commission,* supra; *Hlavati* v. *Board of Adjustment,* 142 Conn. 659, 668, 116 A.2d 504 (1955). On the record before us, including the reasons claimed by Leib for taking additional evidence, we cannot say that the court abused its discretion. The court also did not abuse its discretion in denying Leib's motion for discovery and production.

Where a party, as has the plaintiff Leib, appeals pursuant to the jurisdictional grant of the Uniform Administrative Procedure Act, the agency action is measured by the standards contained within that act. *McDermott* v. *Commissioner of Children & Youth Services,* 168 Conn. 435, 441, 363 A.2d 103 (1975). She has the burden of proof in challenging the administrative action. *Lovejoy* v. *Water Resources Commission,* 165 Conn. 224, 229, 332 A.2d 108 (1973). That burden has not been sustained.

There is no error.

In this opinion the other judges concurred.